POOR QUALITY ORIGINAL

# IN THE UNITED STATES DISTRICT COURT

# THE EASTERN DISTRICT OF MICHIGAN

**MICHAEL DEAN WILLIAMS**

**Plaintiff**

Case: 2:24-cv-11639
Assigned To : Drain, Gershwin A.
Referral Judge: Grand, David R.
Assign. Date : 6/25/2024
Description: CMP WILLIAMS v
STATE OF MICHIGAN ET AL (JP)

**Vs.**

**THE STATE OF MICHIGAN,**
**MICHIGAN DEPT. OF CIVIL RIGHTS,**
**VALERIE BARKLEY,**

**DEMAND FOR JURY TRIAL**

**Defendants**

**PURSUANT TO**
**42 U.S.C. 1983**

---

| | |
|---|---|
| Michael Dean Williams | The State of Michigan, |
| 50018 Degas | 100 N. Capitol Ave. |
| Chesterfield, Michigan, 48051 | Lansing, Mi. 48909 |
| (586) 372-1400 | |
| Acting In Pro Se | MDCR, |
| | 110 W. Michigan Ave. Suite 800 |
| | Lansing, Mi. 48909 |
| | |
| | Valerie Barkley, |
| | 3054 W. Grand Blvd. Suite 3-600 |
| | Detroit, Mi. 48202 |

---

Acting in Pro Se, and Pursuant to 42 U.S.C. 1983, The Plaintiff makes these

allegations against the defendants.

1.

## INTRODUCTION

This case is simplistic when realizing there are circular actions working against the plaintiff. **Crystal Flash protected a black man** for 420 days of 2 assaults and 105 incidents of harassment, "38 documented", conversations, letters, videos of harassments against a white Man. FACTS supported by evidence contained herein.

The State, (the MDCR) comes in and waits 942 days to question the first witness. The MDCR's policy (Racial Equity Toolkit) teaches and instructs (Gov. Agencies, Org. Corps., and private Companies to adopt the Racial Equity Toolkit as company policy ensuring the results obtained by the plaintiff. This is supposed to be an impartial investigation by Valerie Barkley (She, Her, Hers). Valerie Barkleys biases are clear in the (MDCR's) decision.

**We have the "State" teaching the "company". We have the "company" violating "State and Federal" Law using the States teachings. We have the State clearing the "company" of any wrongdoing by ignoring 38 + "documented" incidents, including assaults, and all favorable outcomes went in one (1) direction, the black guy's way.**

The only difference between the plaintiff and Mr. Kenny Walker? Is **"Race", that's it**.

I

## ORIGINAL JURISDICTION

The Court has Subject-Matter Jurisdiction under VII of the Civil Rights Act of 1964, as

codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin)

## PARTIES

**Plaintiff**

The Plaintiff, "Michael D. Williams" is a U.S. citizen and Michigan resident who

resides at: 50018 Degas  Chesterfield, Michigan 48051.

**Defendants**

The Defendants, "The State of Michigan", "The MDCR", are

Government Agencies, and MDCR Staff Investigator, "Valerie Barkley", is a U.S.

Citizen and Michigan Residents. These defendants are being sued for their

**Individual and Official Capacities** located

**at:** The State of Michigan,  100 N. Capitol Ave. Lansing, Mi. 48909.

MDCR,  110 W. Michigan Ave. Suite 800 Lansing, Mi.
48909, and

MDCR Civil Rights Investigator "Valerie Barkley", 3054 W. Grand Blvd. Suite
3-600 Detroit, Mi. 48202.

2.

**The State of Michigan, MDCR, and
Valerie Barkley (MDCR Staff Attorney)**

**"factual allegations"**

**Note:** The meaning of "Surprise Mental Torture" in this document is being harassed to the point where the harassment is certain, but you just don't know where, when, or how, and will I, or others get hurt.

1. Plaintiff alleges the defendant, (State of Michigan) through its Diversity Equity and Inclusion Division, develops and provides education and training using the Michigan Department of Civil Rights (MDCR) Racial Equity Toolkit (RE-Toolkit) **(EX-49)**

2. Plaintiff alleges the defendants, The State of Michigan, The Michigan Department of Civil Rights (MDCR), and staff attorney Valerie Barkley uses the Racial Equity Toolkit as Official Michigan Government Policy for The Michigan Department of the Civil Rights Intake, process, and Investigation complaint Dept., and staff attorney Valerie Barkley. (She, Her Hers). **(EX-48) Racial Equity Toolkit. Racial Equity Toolkit (RE-Toolkit) Stigmatizes the "White Race".**

3. Plaintiff alleges the defendants, The State of Michigan, The Michigan Department of Civil Rights (MDCR), and Staff Investigator Valerie Barkley (She, Her, Hers) violated the plaintiffs 5th and 14th Amendments for "substantive due process" protections against government interference when the defendants are making

3.

a clandestine attempt to subvert the U.S. Constitution, and undermine the current

Rule of Law in The State of Michigan, and of The United States of America using the

Michigan Department of Civil Rights "Racial Equity Toolkit" (RE-Toolkit).

The Racial Equity Toolkit (RE-Toolkit) is a 40-page description of a racist 1000 lb.

elephant in the room that isn't identified anywhere in the 40 pages, and yet every

reader knows who the racists, 1000 lb. elephant in the room is the "white race"

problem. The Plaintiff believes this violates his 14th Amendment for "Equal

Protections","Due Process", and the 8th Amendment protections against "Cruel

and Unusual Punishment". **(EX- 48)**

4.  The plaintiff alleges the defendants of violating the plaintiffs 14th Amendment

    against "Liberty Deprivations" by **"Official Stigmatization"**. in other words, the

    State of Michigan **must not** "brand or mark" a group of people in a way that shows

    strong disapproval. The plaintiff gives you, the Racial Equity Toolkit, aka The State

    of Michigan's Official Stigmatization Guide to White People, although the title is

    probably not exactly as stated, but make no mistake the plaintiff is the result of the

    The Racial Equity Toolkit, and Valerie Barkleys biased investigation.

5.  Plaintiff alleges the defendants, The State of Michigan, The Michigan Dept. of

    Civil Rights (MDCR), and Staff Investigator Valerie Barkley (She, Her, Hers) of

    conspiring with unknown conspirators, and her superiors of using the Racial Equity

Toolkit to deny the plaintiff, his Constitutionally Protected Civil Rights under Title VII of the Civil Rights Act of 1964), which is a violation of 18 U.S.C. 241 Conspiracy Against Rights.

### The Racial Equity Toolkit (RE-Toolkit) states:

"Through a racial equity lens, **decision makers** can identify and dismantle policies, practices, **attitudes** and cultural messages that sustain differential outcomes by race and/or fail to eliminate them". **(pg. 5).**

6.  Plaintiff alleges the defendants, the State of Michigan, MDCR, and "decision maker" Valerie Barkley of advocating for threatening people with "**attitude**" adjustments of the opposing opinion holders, and to eliminate them? There is no logical reason for this word to be listed here, except as a reminder to whistleblowers. This violates the plaintiffs 14th Amendment for "Due Process", and "Equal Protections" that guarantee an unbiased "Decision Maker" as a judge, but Valerie Barkley **was the judge,** and **the investigator** in this case. This duel position also violates the plaintiffs "procedural due process", and "substantive due process" protections.

5.

7. Plaintiff alleges the defendants, the State of Michigan, the MDCR, and Valerie Barkley, of judging the plaintiffs individual case with a "group think" mentality, (or) thinking systemically (or) In a manner that affects an entire system, violates the plaintiffs ability to receive the individual attention his case deserves. This non individual way of thinking removes the individual and specific facts that surround individual cases such as the plaintiffs, This "group think" violates the plaintiffs 14th Amendment of "Due Process", "Equal Protections".

8. Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) of using the "racial equity lens" when making decisions in this case denied the plaintiff of his Title VII of the Civil Rights Act of 1964 against discrimination by race, also violates the plaintiffs 14th amendment "Equal Protections", "Due Process", and the 8th Amendment against "Cruel and Unusual Punishment". With the **"MDCR's Training Solutions focuses on race extensively, but not exclusively"**, ensures that each and every claimant has an "extensive chance" that during the MDCR investigation, not only did the the plaintiff, but every claimant was being judged by someone wearing racial equity lens, in other words, are you white? That's the first decision made in MDCR's complaint process, what's your color? **(EX- 48 pg. 5).**

6.

**The Racial Equity Toolkit (RE-Toolkit) states:**

"Through a racial equity lens, **decision makers** can identify and dismantle policies, practices, **<u>attitudes</u>** and cultural messages that sustain differential outcomes by race and/or fail to eliminate them". **(EX-48 pg. 5).**

9. Plaintiff alleges the defendants, the State of Michigan, MDCR, and "decision maker" Valerie Barkley, are advocating for threatening people with "**attitude**" adjustments or in other words, "re-education camps" for the opposing opinion holders. How can any claimant have confidence in the investigation if employees of the MDCR can have their "attitudes" adjusted by their supervisor to fit their narrative direction of that day regardless of the evidence, violates the plaintiffs 14th Amendment against "Due Process" and "Equal Protections".

10. Plaintiff alleges the defendants, The State of Michigan, The Michigan Department of Civil Rights, and Staff Investigator Valerie Barkley (She, Her, Hers) of violating the plaintiffs 5th and 14th Amendments for "Substantive Due Process" protections against government interference, "Equal Protections", and the 8th Amendment protections against "Cruel and Unusual Punishment" when the defendant's policy is a **"guaranteed outcome"**, to which is instructed in the Racial Equity Toolkit (RE-Toolkit). This policy is discriminatory by the fact that trying to make outcomes equal, someone always gets discriminated against. **(EX- 54)**

7.

11.  Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) violated the plaintiffs 5th and 14th Amendments for "substantive due process" protections against government interference. When the defendant (investigator Valerie Barkley) waited **941 days** to start the plaintiff's "Due Process", "Equal Protections) by interviewing the plaintiff's first witness on 8-10-2023, **941 days** after filing the complaint with the MDCR. (MDCR). <u>Email 7-31-2023</u> **(EX-45).**

12. Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) violated the plaintiffs 5th and 14th Amendments for "substantive due process" protections against government interference, and "Due Process" and "Equal Protections" when Valerie Barkley allowed vital and critical verification evidence for authentication to be lost forever by refusing to use subpoena powers at her disposal to retrieve electronic evidence from communication companies of the parties involved in a timely manner while the plaintiff was under the restraints of completing his **"Administrative Remedies"** which is required of the plaintiff. <u>email 9-20-2021</u> **(EX- 41).**

13.  Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) acted recklessly without regard to the plaintiff's right to **"Due Process",** and **"Equal Protections"** when the defendant lost her ability to gather, collect, retain,

8.

and deliver evidence upon request. The plaintiff had to send the evidence twice,
and then Valerie Barkley sent the following email to the plaintiff on 9-20-2021,
8 months after the plaintiff turned over all evidence contained herein to the MDCR.
The plaintiff sent the evidence twice to the MDCR office in Detroit, and then
Valerie asked the plaintiff if he could resend the evidence, to send it a third time to
Mr. Karega. **Valerie Barkley admits she cannot be certain what if any
documentation was received, and "if it isn't to much to ask, is to just
forward or resend it to him".** This doesn't give the plaintiff confidence that
Valerie Barkley saw the evidence at all. email 9-20-2021 **(EX-41).**

14. Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers)
violated the plaintiffs "equal protection" and "due process" when Valerie Barkley
stated the "plaintiff didn't provide "a statement" to the company, (respondent),
when in fact the plaintiff supplied approximately **38 + statements,** and other
pieces of evidence including text messages, pictures, videos, handwritten letters
from the plaintiff about the assaults and harassments from Mr. Kenny Walker
against the plaintiff has been given to the co-defendants, Crystal Flash Co.'s
top management. **CEO-Tom Olive, COO- (John Doe), Trans. Dir.- Craig
Broekhuizen, H.R. Dir. Krinn Vandersloot, and Dispatcher Manager-
Caitlyn Kozal.** email 9-20-2021 **(EX- 40).**

9.

15. Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) violated the plaintiffs 5th and 14th Amendments for "substantive due process" protections against government interference, and her oath of office when Valerie Barkley **after having the case for over 200 days**, Valerie Barkley suggested an option to the plaintiff that would have re-set the clock in this plaintiffs case back to stage one, the filing stage. Being an attorney, Valerie Barkley knew or should have known the consequences she was offering to the plaintiff would have negatively impacted the plaintiff's case, since the court would require any plaintiff to complete Administrative Remedies before filing, so Valerie Barkley was offering the plaintiff the option of starting over, that's it, that' all Valerie Barkley was offering to the plaintiff, **would you like to start over?** email 9-20-2021 **(EX- 42).**

16. Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) violated the plaintiffs 14th amendments of "Due Process" and "Equal Protection" when Valerie Barkley changed the meaning of **"race"** from what most people to understand race to be in America as African American or black American, White American or Caucasian, Latino American, Asian Americans. The defendant, Valerie Barkley has re-interpreted **"race"** to be a social construct defined by page #2 of the Racial Equity Toolkit (RE-Toolkit) as meaning anything inside a social construct can only survive in a "subjective reality" where different realities can exists simultaneously. **(EX- 48 pg. 2).**

10.

### MDCR Staff Attorney and Investigator

### "Valerie Barkleys" (She, Her, and Hers)

### "Decision"

**Note:** Valerie Barkley had 50 + pieces of evidence from the plaintiff before she
interviewed the first witness on 8-10-2023.

### Hostile Environment/race

17. **(35a)** Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her,

Hers) violated the plaintiffs 5th and 14th Amendments for "Substantive Due

Process", and "Due Process" protections against government interference, and

"Equal Protections", and the 8th Amendment protections against "Cruel and

Unusual Punishment" when Valerie Barkley made the following decision. "Hostile

Environment/race- **The evidence DID NOT reveal you were subjected to**

**any comments because of your race, or that the conduct you alleged**

**your former slip seat partner subjected you to (adjusting truck seat,**

**steering wheel,. Radio stations, a liquid substance outside the truck,**

**verbal assaults), was done because of your race."** In other words, 38+

reported incidents of Hostile Work Environment harassments against a white man,

from a black man, wasn't enough evidence to conclude that it was race, even when

the plaintiff revealed that every report of harassments, all 38+ against Mr. Walker,

went in his favor, and against the plaintiffs well being because of all the "appropriate

11.

actions" taken by the defendants were never meant to stop the harassment, if it was,

the number would never have reached 38 + documented, 105 + total since 2-2-2020.

Valerie Barkley was involved in a conspiracy with the respondent, aka co-defendant,

Crystal Flash Co. to oppress, and injure the plaintiff violated 18 U.S.C. 241

Conspiracy Against Rights. email 2-9-2024 **(EX-35a).**


18. **(35b)** Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her,

Hers) violated the plaintiffs 5th and 14th Amendments for "Substantive Due

Process", and "Due Process" protections against government interference when

Valerie Barkley assumed the role of a physician by concluding that the 38 +

incidents of harassments **"the evidence did not reveal that the conduct you**

**(referring to the plaintiff) alleged interfered with your work**

**performance or was so severe or pervasive to create a hostile**

**environment based on race."** Valerie Barkley is referring to the plaintiffs

ability to handle "Surprise Mental Harassment" of 38+ incidents couldn't have

been that bad, because she assumed it didn't affect my job performance. Which

further explains that Valerie Barkley didn't look at what co-defendant Crystal

Flash Petroleum was putting in the plaintiffs personnel file about job performance.

Email 2-9-2024 **(EX-35-b).**

12.

19. **(35c)**  Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) violated the plaintiffs 5th, 8th, and 14th Amendments for "Substantive Due Process", and "Due Process" protections against government interference, and "Equal Protections"against "Cruel and Unusual Punishment" when Valerie Barkley refused to recognize the totality of the alleged 38+ documented incidents over a two (2) months period, and 105 + over a 420 day span, and such an extreme lengthy period of time, that the harassment was allowed to continue is because Crystal Flash never had any intentions of stopping Mr. Kenny Walkers threats from coming true, and because Valerie Barkley said "Respondent took appropriate actions when you made internal complaints", referring to all 38+ of them. The plaintiff received at most 3-strikes and then terminated. Mr. Kenny Walker was given 38+ passes for assaults and harassment. Also, when Valerie Barkley said: "you and your slip seat partner were separated to try and alleviate any future issues and race was not a factor". That is false on two (2) counts, 1, the separation Valerie Barkley is referring to is the termination of the plaintiff, and two, **if race was NOT a factor,** what "appropriate action" took 38 + efforts by Crystal Flash and still never stopped the harassment until the plaintiffs' termination. email 2-9-2024 **(EX- 35-c).**

13.

**Discharge/Race, and Retaliation**

20.  **(35d)** Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her,

Hers) violated the plaintiffs 5th and 14th Amendments for "Substantive Due

Process", and "Due Process" protections against government interference, and

"Equal Protections" when Valerie Barkley said:  **You (referring to plaintiff)**

**did not provide any comparatives to show you were treated less**

**favorably than a co-worker of another race who engaged in similarly**

**situated conduct".**

When in fact Valerie Barkley didn't take into consideration plaintiffs assaulter, and

harasser (Mr. Kenny Walker),  who is a black co-worker of the plaintiffs, a co-driver

of the plaintiffs, and who shares the same supervisor as the plaintiffs, is subject to

the same rules and policies as the plaintiffs, who performs the same job with the

same responsibilities as the plaintiffs, has similar job performance evaluations as

the plaintiffs, and Valerie Barkley said the plaintiff "**didn't provide any**

**comparatives**", when in fact the plaintiff provided 8 comparatives above.

email 2-9-2024  **(EX- 35-d).**

14.

21.   (35**e**) Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her,

Hers) violated the plaintiffs 5th and 14th Amendments for "Substantive Due

Process", and "Due Process" protections against government interference, and

"Equal Protection", when Valerie Barkley said: **"You (referring to plaintiff) did**

**not provide sufficient evidence of pretext to show that the plaintiffs race**

**was a factor in your discharge".** The plaintiff believes Valerie Barkleys

interpretation of **"proof of pretext"** is fatally flawed and blurred by her vision

through the racial equity lens policy the MDCR is using. Remember Valerie Barkley

is a Michigan Attorney sworn to uphold Michigan and U.S. laws. The examples of the

plaintiffs already provide **"evidence of pretext"** below, Valerie Barkley said

"wasn't enough."

   a) The lack of documentation is considered **"proof of pretext"**.

   The following **(22)** exhibits are missing from the plaintiffs personnel file.

   **(EX-1, 2, 4, 11, 12, 13, 14, 15 , 16, 17, 19, 21, 22, 23, 24, 25, 26, +**
   **3-videos, 2 Letters sent to CEO Tom Olive).**

   b) Failure to investigate under highly suspicious circumstances is **"proof of**

   **pretext"**.

   On Jan. 15, 2021 plaintiff sent **(EX-18)** a letter to his boss, Caitlyn Kozal

   in which the plaintiff reports 5 months of harassment from the same guy

15.

who assaulted him, and went into greater detail that Mr. Kenny Walker

was fulfilling his threats made 9 months earlier when he assaulted the

plaintiff.

**Crystal Flash Co. never contacted the plaintiff about this**

**letter or any of its content, ever.**

c) <u>Employer's reason for termination is factually false,</u> is **pretext.**

On 3-25-2021, Crystal Flash Co. stated in the plaintiffs termination

papers that **"Mike refused to go and meet the investigator."** When

in fact the plaintiff never refused to speak with the investigator, and it was

confirmed by MDCR investigator Valerie Barkley in an email dated

9-20-2021 **(EX-12)** where Valerie Barkley said, **"I am aware you would**

**have spoken to the investigator if you could record the interview."**

Plaintiff never refused to go and speak with the investigator, therefore

Crystal Flash Co. falsified information in **(EX-49)** when

co-defendant "Craig Broekhuizen" check the box for "lack of cooperation"

when he knew that was false. Co-Conspirator Craig Broekhuizen also

checked the box for "insubordination". The plaintiff is being punished for

four (4) untrue statements in **(EX-49).**

16.

**One (1)**, "Mike never refused to speak to the investigator, and it was confirmed by the MDCR investigator."

**Two (2)**, The checked box for "lack of cooperation", not true. The plaintiff was willing to go.

**Three (3)**, The checked box for "insubordination", how can a company get to insubordination when the plaintiff agreed to meet with the investigator if the plaintiff could record the meeting, it was Crystal Flash and their attorney "Jody" who said in a 3-18-2021 email **(EX-63)** to the plaintiff, **"Michigan requires both parties to a conversation to agree that a conversation may be recorded. I nor Crystal Flash agree to that so no recording will be made of any interview if you decide to appear."** Apparently it is now insubordination to demand a recording of a meeting that the plaintiff is being forced to take part or else.

**Four (4)**, Co-defendant, Director of Transportation at Crystal Flash "Craig Broekhuizen" knew most of this information wasn't true, because when he came to the question "Has a previous counseling report been completed? Craig Broekhuizen checked both Yes and No answers, couldn't make up his mind. Crystal Flash Co. made a few false statements in the plaintiffs termination papers, which is **"Proof of pretext"**.

17.

d) <u>Crystal Flash failed to follow Company Policies</u>, **is pretext.**

The plaintiff and Mr. Kenny Walker was equal in every way while working

for Crystal Flash Co. except in two (2) ways. **One,** Mr. Walker had 5

more years of seniority than the plaintiff. **Two,  Mr. Walker is Black**.

Crystal Flash gave the plaintiff a 3-strike rule before terminating the

plaintiff. Mr. Kenny Walker was given two (2) passes on the two (2) assaults

because he wasn't terminated. Mr. Walker harassed the plaintiff over 105

times in the following 420 days until the plaintiff was terminated on

3-24-2021 for filing a complaint with the Michigan Department of Civil

Rights on 1-24-2020. Crystal Flash Co. failed to follow company

policies against Mr. Kenny Walker by giving him the racial protection policy

which meant NO consequences for the 2 assaults or the 38 + documented

instances of harassment that no other employee had. **This is a pretext.**

The plaintiff believes the quantity and quality of the pretext he has supplied to

Valerie Barkley legitimately met sufficient evidence of pretext to show **race was the**

**only factor** (difference between the two) in his discharge. It must be questioned,

with so much evidence of pretext, what is Valerie Barkleys "measuring stick" when

determining "pretext" in Michigan's Civil Rights cases where "pretext" means so

much to the victim.

18.

Pretext for "white victims" must be viewed through the Racial Equity Lens so the black man's race, his life experiences, his education, and criminal history records of the perpetrator, (a black man) is taken into consideration before allowing any "pretext" to be considered for a white victim, the plaintiff.

The plaintiff reported to co-conspirator **(Caitlyn Kozal)** on 1-15-2021, that he has been harassed for the last 5 months by a black co-worker. Co-defendant, Crystal Flash Petroleum failed to investigate this report by the plaintiff of assaults, theft, specific harassments, and above all the plaintiff is expressing his fear of the continuation of "Surprise Mental Harassment" that Mr. Kenny Walker threatened him with, and the company is allowing him to fulfill. A notification to the defendant from the plaintiff on 1-15-2021 about the prior five (5) months of harassment is "highly suspicious circumstances", which is **proof of pretext**.

Furthermore, the most disturbing part of Valerie Barkley's decision on "evidence of pretext" is intentionally false and misleading. Crystal Flash Co.'s co-conspirator Craig Broekhuizen "falsely" stated in **(EX-49)**

 **"Mike (the plaintiff) refused to go and meet the investigator"**.

The co-defendant, Valerie Barkley knew this statement was false when she read it.

19.

In a September 23, 2021 email **(EX-12)** from Valerie Barkley to the plaintiff stating:

**"I am aware you would have spoken to the investigator if you could record the interview"**. This conclusion by Valerie Barkley is heavily flawed with her inability or outright refusal to recognize that if an employer's reason for termination is factually false, **it is pretext**. She knew it was false, she knew she had 38 + pieces of evidence just from the plaintiff, **which is pretext,** Valerie Barkley knew the "failure to investigate highly suspicious circumstances" **was a pretext,** The missing 22 assault and harassment documentations missing from the plaintiffs personnel file **is a pretext**. There's no documentation supporting claim that Crystal Flash counseled the plaintiff before terminating him because the plaintiffs termination papers said the plaintiff was Not counseled before termination, **that's the pretext**. Furthermore, failure to follow company policies **are pretext.** but the main failure of defendant, Valerie Barkley's investigation is what the plaintiff believes is an intentional act by the State of Michigan and Michigan Department of Civil Rights to interfere in holding Crystal Flash Co. accountable because Crystal Flash Co. had instituted the Racial Equity Toolkit policies as their own. How else do you get 38 + contacts about a black man who assaulted a white man twice, and harassed him a 105 + occurrences, and every decision by the company, aka Crystal Flash Co. went in one direction 38+ times, the **"Black way"**.

20.

The plaintiff has/had is the exact results the Racial Equity Toolkit (RE-Toolkit) demands. The MDCR would hold Crystal Flash accountable for this 420 days of "Surprise Mental Harassment" against a white man would be like the teacher (the State), punishing its student (Crystal Flash) for getting an "A" in "race protection". MDCR investigator, co-defendant, Valerie Barkley deprived the plaintiff of his Constitutional rights under the 5th, 14th, and 8th Amendments by violating **18 U.S.C. 241. "Conspiracy to Deprive Rights"**

## Retaliation

22. **(EX-35f)** Plaintiff alleges the defendant, Staff Investigator Valerie Barkley (She, Her, Hers) violated the plaintiffs 5th and 14th Amendments for "Substantive Due Process", and "Due Process" protections against government interference, and "Equal Protections", and against Cruel and Unusual Punishment" when Valerie Barkley decided that the retaliation law is not a stand alone law, and that there has to be a race "prerequisite" before the plaintiff gets the protection from the retaliation law. This decision by Valerie Barkley is opposed to the Supreme Court's definition of retaliation, and not a single word about race, and yet she makes these false interpretations of the law just to create the appearance that "appropriate actions" were taken by the respondent.

21.

Even more disturbing is that Valerie Barkley is a Licenced Michigan Attorney who seems to be intentionally misstating what Michigan and Federal Law is. The elements of a retaliation case has No "race element" to the retaliation law. The plaintiff alleges this insertion of "race" by Valerie Barkley where none is required is an abuse of her power and a violation of "Equal Protections" because she is independently adding additional hoops to jump through before the plaintiff can use the retaliation law as protection. and an intentional act to intervene and prevent co-defendant Crystal Flash Co. from being charged with discrimination.

  email 3-24-2021 **(EX- 35-f).**

**\*\* What Are the Elements of a Retaliation Claim?**

  (If an <u>investigative agency</u> receives a claim of retaliation, the agency should consider whether the evidence establishes the court-developed elements of the claim. Under Title VI, the evidence must show that **(1)** an individual engaged in protected activity of which the recipient was aware; **(2)** the recipient took a significantly adverse action against the individual; and **(3)** a causal connection exists between the individual's protected activity and the recipient's adverse actions.)

(1) The plaintiff files a complaint against Co. with the MDCR, (protected activity).
(2) The recipient (Crystal Flash) fired the plaintiff (<u>significant adverse action</u>).
(3) The <u>casual connection</u> is Employer, and Employee.

22.

## LEGAL CLAIMS

1.  The plaintiff suffered as a direct result of the defendant's adoption of the Racial Equity Toolkit (RE-Toolkit) as Official Michigan Government Policy. This policy violated the plaintiffs Title VII of the Civil Rights Act of 1964, for "Race", and 14th Amendments for "Due Process" and "Equal Protection".

2.  The plaintiff suffered because of his "White race". As a direct result of this Official Michigan Government Policy of "Stigmatizing" white people as being racists, or the "dominant group". Every negative view of white people or their actions are considered in strong disapproval, and are within its 40-pages. Michigan Dept. of Civil Rights violated the plaintiffs Title VII of the Civil Rights Act of 1964, for "Race", and 14th Amendments for "Due Process" and "Equal Protection".

3.  The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to delay and NOT use the subpoena power to retrieve vital electronic evidence from "phone companies", or other electronic storage companies of the defendants, even when the plaintiff reminded the MDCR, "witnesses who seen, and still may hold the threatening text messages from Ken Walker." 7 weeks before the plaintiff was terminated. Defendant Valerie Barkley violated the plaintiffs 14th Amendments for "Due Process" and "Equal Protection". **(EX-38a)**

23.

4. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to delay and NOT interview any witnesses for 941 days. This single action combined with not even asking for evidence during this time frame, would suggest an underlying effort by the Michigan Dept. of Civil Rights to interfere in a case where the victim is "White". Defendant Valerie Barkley caused irreparable harm to any possible court action by giving the defendant an argument of "authenticity of evidence". The plaintiff believes this was an intentional act of interference." Valerie Barkleys actions violated the plaintiff's 5th and 14th Amendments for "Substantive Due Process", and "Due Process" protections against government interference, and "Equal Protections".

5. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to accept as fact, what she knew already to be false evidence provided by the defendant, violated the plaintiffs Administrative Rights, the 14th Amendment for "Due Process" and "Equal Protections", plaintiff's 5th and 14th Amendments for "Substantive Due Process", and "Due Process" protections against government interference.

6. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to to wait two and half years to inform the plaintiff that on 5-11-2023 that he finally met his "administrative recourse."

Either way the plaintiff chooses, the damage of TIME has been done, memories don't get better waiting 840 days to ask a question. This damage was intentional and deliberate, and under the color of law, which violates Title 18, U.S.C. Sec.242, and the 14th Amendments for "Due Process" and "Equal Protection".

7. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to overstep her authority, make a medical evaluation of the plaintiff, and violated every ethical rule in the State of Michigan by implying and her outright deceitful and untrue statements in her decision about how she concluded and reached those decisions, violates Title 18, U.S.C. Sec.242, and the 14th Amendments for "Due Process" and "Equal Protection".

8. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to overstep her authority by changing the meaning of "Hostile Work Environment" to "Hostile Environment", removing the word "work," and replacing it with, "race". Now it says "Hostile Race Environment", or as the Racial Equity Toolkit states: "System of Advantage Based on Race". The fact that the plaintiff could never convince a bias decision maker, Valerie Barkley (She, Her, Hers) of Hostile Work Environment violates the plaintiffs Title VII of the Civil Rights Act of 1964, for "Race", and 14th Amendments for "Due Process" and "Equal Protection."

9. The plaintiff suffered as a direct result of defendant, when Valerie Barkley's decided two assaults, 38 + documented incidents totaling 105 harassments against a white man by a black man, and since that black man wasn't saying racists things to the plaintiff, in Valerie Barkleys "racial equity lens" eyes, the black man has done nothing wrong because he "didn't make any comments because of your (plaintiffs) race". Valerie Barkley is directly changing the law, the meanings of words to fit the Michigan Dept. of Civil Rights Racial Equity agenda. This violates Title VII of the Civil Rights Act of 1964, for "Race", and 14th Amendments for "Due Process" and "Equal Protection.

10. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to decide that the documented 38+ harassments, and 2-assaults, over a 420 day period was NOT severe enough to cause or interfere with the plaintiffs work performance, thus making a medical decision on how successful or not, the plaintiff handles torture and stress while at work from a black man. That decision violates the plaintiffs 14th Amendment for "Due Process", and "Equal Protections".

11. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision to actually say "The evidence showed Respondent took appropriate action when you (the plaintiff) made internal complaints", 38 times +. Valerie Barkley deliberately

26.

used her racial equity lens to dismiss each and every assault and harassment with the label "appropriate action" and dismissed it. Violated the plaintiffs 14th Amendment for "Due Process", and "Equal Protections", and 5th and 14th Amendments for "Substantive Due Process", and "Due Process" protections against government interference, and "Equal Protections".

12. The plaintiff suffered as a direct result of defendant, when Valerie Barkley said the plaintiff **"didn't provide any comparatives"**, when in fact the plaintiff provided 8 comparatives. This is obviously a deception, describing 8 comparatives as NOT having any violates the plaintiffs 14th Amendment for "Due Process", Equal Protections", and 18 U.S.C. sec. 241, 242 conspiracy against rights.

13. The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision that the plaintiff "did not provide sufficient evidence of pretext", when in fact the plaintiff provided 25+ separate instances of pretext. This MDCR, Valerie Barkleys decision has violated the plaintiffs 14th Amendment for "Due Process", Equal Protections", and 18 U.S.C. sec. 241, 242 conspiracy against rights. This violates Title VII of the Civil Rights Act of 1964, for "Race", and 14th Amendments for "Due Process" and "Equal Protection

27.

14.  The plaintiff suffered as a direct result of defendant, Valerie Barkley's decision that

the text message from the plaintiffs boss stating, "Due to the claim you filed against

CF (Crystal Flash) and the resulting ongoing investigation we will not be able to work

you tomorrow." was not a smoking gun. Valerie Barkleys decisions about this case

focused on race and race alone, which violated  the plaintiffs Title VII of the

Civil Rights Act of 1964, for "Race", and  14th Amendments for "Due Process" and

"Equal Protection.

28.

## DAMAGES

**Wherefore,** plaintiff request that this Court grant the following:

Hold the defendant's State of Michigan, Michigan Dept. of Civil Rights, and Valerie Barkley accountable in their professional and personal capacity for their actions for abusing their power, violating the plaintiff's 14th Amendment of "Due Process", and "Equal Protections", and violated the plaintiffs 5th and 14th Amendments for "Substantive Due Process", and "Due Process" protections against government interference, and "Equal Protections". The plaintiff would also ask this Court to consider Valerie Barkleys approval of a lie she knew was false, making a medical evaluation of the plaintiff. Valerie Barkley turned her back on evidence of the Respondent falsified documents, deleted 24 documents from the plaintiffs personnel file, and literally ignored the plaintiff pleading for help for months.

**Therefore,** the plaintiff request damages in the amount of Two Hundred and Fifty One Million (251,000,000) Compensatory damages, and Eight Billion (8,000,000,000) in punitive damages.

29.

Dated: June 24, 2024                    Respectfully Submitted

By: *Michael Williams*
Michael Dean Williams
In Pro Si
50018 Degas
Chesterfield, Michigan 48051
586-372-1400

23.

## Exhibit List
### "State of Michigan"

| Ex. # | From | To Who | Description | Date |
|---|---|---|---|---|
| 35. | MDCR | Plt. | Valerie Barkley's Decision | 2-9-2024 |
| 35a | " " | Plt. | ok to harass, just no comments | 2-9-2024 |
| 35b | " " | Plt. | Valerie Barkley makes medical diagnosis | 2-9-2024 |
| 35c | " " | Plt. | Co. took "appropriate actions" 38 times | 2-9-2024 |
| 35d | " " | Plt. | Valerie Barkley is Conspiring & interfering | 2-9-2024 |
| 35e | " " | Plt. | Didn't provide pretext, can't be more wrong | 2-9-2024 |
| 35f | " " | Plt. | the claim you filed against CF, you're fired | 2-9-2024 |
| 36. | Plt. | MDCR | urinating, he just won't let up on harassing | 2-7-2021 |
| 37. | Plt. | " " | Craig thought it was no Big Deal | 2-12-2021 |
| 38. | Plt. | " " | asking for immediate help from MDCR | 2-12-2021 |
| 38a | Plt. | MDCR | you still can get threatening texts from KW | 2-2-2021 |
| 39. | MDCR | Plt. | Valerie Barkley authenticating evidence | 9-23-2021 |
| 40. | " " | Plt. | plt. would have spoken to investigator | 9-23-2021 |
| 41. | " " | Plt. | Valerie Barkley loses plt's evidence | 9-23-2021 |
| 42. | " " | Plt. | UNETHICAL "would you like to start over" | 9-23-2021 |
| 43. | MDCR | Plt. | Valerie Barkley, met Administrative Duties | 5-11-2023 |
| 44. | Plt. | MDCR | MDCR proven results of Racial Lens usage | 7-20-2023 |
| 45. | MDCR | Plt. | 941 days until the 1st. witness interview | 7-31-2023 |
| 46. | OAG Report on MDCR, The (RE-Toolkit) strikes again, dismantle it | | | 8- 2023 |
| 47. | News Article Beth LaBlanc analysis of the OAG Audit | | | 8-24-2023 |
| 47a. | Judge Friendly's list of Due Process Elements for a fair hearing. | | | |
| 48. | 40 pages | Complete Racial Equity Toolkit (RE-Toolkit) | | |
| 49. | | Diversity Equity and Inclusion, MDCR established an equity office in Jan. 2018. | | |
| 50. | Pg. 5 | MDCR issues "attitude" WARNING to eliminate them. | | |
| 51. | | "Mission Statement" refers to a group of people as the problem makers, "The 1000 lb. Elephant in the Room" is never identified. | | |
| 52. | Pg. 4 | MDCR is "changing the language". | | |
| 53. | Pg. 6 | The past broke "us", today's problem, "The 1000 lb. Elephant". | | |
| 54. | Pg. 10 | outcomes guaranteed, individual achievement must GO. | | |
| 55. | Pg. 11 | members of the "dominant group", imposing identification reqmts. | | |

# Affidavit

**STATE OF MICHIGAN**

**COUNTY OF MACOMB**

I, the undersigned, swear under oath, and affirm and attest as follows, as of June 24, 2024.

The foregoing information is true and accurate to the best of my knowledge.

1.    All presented evidence contained herein are true and accurate to the best of my knowledge and under penalty of perjury.

2.    I, the plaintiff, experienced 105 direct harassments, plus two assaults, from Mr. Kenny Walker which started 2-2-2020 until plaintiffs termination on 3-24-2021, a (**420 day period**).

3.    I, the plaintiff reported the harassment to my dispatcher "Krueger" in November of 2020 to the point where "Krueger" reminded the plaintiff more than once, "he's tired of hearing about Kennys and yours (the plaintiff)'s bullshit", the plaintiff agreed. (**EX-7**)

4.    I, the plaintiff, never said I had anger management problems when Craig Broekhuizen, and Krinn Vandersloot called me on or about 2-26-2021.

5.    I, the plaintiff, agreed to meet the investigator "if" the plaintiff was allowed to record the meeting, Crystal Flash and their Attorney/Investigator said "NO" to the meeting.

26.

6.    I, the plaintiff describe the three (3) videos in the case, as the plaintiff arriving at work three (3) different days and what the plaintiff was experiencing at the time of starting his work day.

7.    I, the plaintiff wrote the 1-15-2021 "Help Letter" **(EX-3)** which tells Crystal Flash of being harassed for the last five (5) months, and management didn't respond.

8.    I, the plaintiff documented the two (2) assault incident at the terminal **(EX-1)**, because Crystal Flash chose to NOT document it anywhere in the plaintiffs personnel file.

**IN WITNESS THEREOF**, the undersigned executes this Affidavit as of this date

6-24-24.

Signature *Michael Williams*

Michael D. Williams (plaintiff)

**STATE OF MICHIGAN**

**COUNTY OF MACOMB**

The forgoing instrument was acknowledged before me this 24th day of

June_____, 2024.

_____
Notary Public

My Commission Expires: March 29, 2029        Seal

27.

EISHO OTIS DAVID
Notary Public - State of Michigan
County of Macomb
My Commission Expires Mar 29, 2029
Acting in the County of Macomb

This description of the assault's of (white) Mr. Michael Williams, by (black) Mr.Kenny Walker is necessary because Crystal Flash Co. didn't document it anywhere. But, in the dozens of times that Michael Williams has mentioned it, Crystal Flash never denied it happened in any documentation sent to Michael Williams.

**On 2/2/2020** after returning from a 12 hour days work, I, Michael Williams exited his truck and then noticed Mr. Kenny Walker walking abruptly to the same truck where I just left that we share. Mr. Walker exited the truck and hollered "hey Mike', I said that's me, Mr. Walker approached me, and said, I noticed you didn't put your paperwork in the place I told you! I told Mr. Walker I put it in the door and that's exactly what the law says, so if you have a problem with that, take it up with Management. Mr. Walker took steps to put his finger in my face while stating, Look this is my truck, you will put your paperwork where I tell you and nowhere else, or else, do you get me? I repeated, it's not your truck and if you have a problem with where I'm putting my paperwork, call the office. I turned away and Mr. Kenny Walker stated...this has been "off the record", I said the hell it is, and got into my car and left. As I drove, I called Dennis, my dispatcher, and told him I had to quit because of what Mr. Walker just did, but at the moment I am going to the Warren Police dept. to file a report. On my way, Mr. Kenny Walker texts me and states "you remember what I said, or else.

1.

That's why I told Dennis that I had to quit, because I believed Kenny Walker would

follow me home. After arriving at the police station and explaining what just

happened, the officer and I agreed to wait and see what management will  do about it

the next day before I do anything further with the police. I drove home from there.

Michael Williams on 3-30-2021.

*Michael Williams*

**2.**

*Attachment*

EX-3

To: Caitlyn (Dispatch Supervisor)

From: Michael D. Williams

Subject: Continued harassment from Kenny Walker


Date 1-15-2021


Dear Caitlyn,

   Ever since I was assaulted by Kenny and I informed the company of what happened he has been harassing me in little petty continuous things for months. I've told you that all this time I've chose to let it go because I don't believe it's your job to have to babysit 2 grown men. For the past 5 months I've lost a pr. of expensive sunglasses that I left in the truck, He empties the air our of the drivers seat when he's done. He changes all of the radio stations I listen too to the same station on all 6 preset buttons on both FM1 or FM2, WHO DOES THAT. I've been told by at least a dozen drivers and people who have been at Crystal Flash for decades have said to me that "I told you so, it would almost be impossible to slip seat with that kind of driver". He just has to make sure my first thought in the morning about doing my job is him. I don't want to be moved out of the truck or moved to another terminal yard, I'm at a loss about what to do, he kinda scares me because I don't know what he might do to me or the truck. I remember asking you and Craig "is there anything I should know about Kenny" before I ever met him. I know your hands were tied and couldn't say anything, what do you suggest?


Please put in my file at work.


Respectfully


*Michael Williams*

Michael D. Williams

*PG 1 oF I*

*EX-4a*

12/6/19

Started training with Dave Reed

1/3/20

Dave and Mike not getting along.  Mike ready to card but not confident in his work.   Mike under the impression he only has to work 10-12 hour days and will not work beyond 12.

1/6/20

Carded at Marathon Detroit and Buckeye.

1/10/20

Mike moved to Eric to finish up training.

1/15/20

Mike has not punched in on Paycor all week.  Jaime talked to Mike and he did not even know his user name or password after a month on the job!  His previous trainer Dave Reed was punching Mike in and out.  Mike also did not have his training folder with him to look up his password.

1/30/20

Dave Wolfe did a ride along.  Mike did a great job and was thankful for Dave's help.  Form attached.

1/31/20

Started on his own.

3/1/20

Did not complete Feb. videos

3/2/20

90 day review given.    CB

3/9/20

Came to work without FR pants on.  Marathon-Detroit would not let him load.  He did not get suspended.

3/20/20

February videos still not complete after I asked him directly to complete them.

3/30/20

The store manager from Speedway 8727 just called the driver is there delivering he came in the wrong way and is yelling at customers and honking his horn telling them they have to move.

Her name is ███████ 586-███████ if you want to talk to her.

Crystal Flash (Williams) 000052

pg. 4 of 5

EX-4b

2021- Mike Williams

1/8- Mike was dispatched a split to 8876 whitmore lake and 8708 ann arbor. He did deliver to 8708 ann arbor. He didn't look at his workflow until end of shift. He said he never got the text to split but looked back and saw it. He only hauled 7400 gallons which should have been a sign that something wasn't right but he did not question it. I also reminded him that he needs to be doing workflow every load. Had to tell marathon that we didn't do the split and deliver like they asked. – ck

2/8- Mike texted and asked if we had received a letter concerning "Kenny's Continued Harassment". I had stated that yes, the letter was forwarded onto HR and Craig via email. He said he knows that it isn't our job to deal with harassment but he has tried to tell Kruger and Kruger told him that he didn't have time to deal with it. He felt Kenny is pissing out of the truck so he would have to think about him. I told him by the pictures it looks like Kenny is dumping a cup of coffee or a beverage out at the end of his day (I did forward picture and text to HR and craig). Mike also then proceeded to send a video that he said he took 2 months ago of him getting to the truck and seeing all the presets were to the same station on the radio, the seat was all the way down, and the steering wheel column up. He then called me about the situation. I told him that every complaint has been forwarded to HR/Craig. I also told him that the shop could have adjusted things since it was a star truck. Even if Kenny did change it, he would be readjusting to his liking when he got into the truck. He was still unhappy with that response and said he feels that Kenny is now going to sabotage the truck somehow. I tried to explain that I feel he is reading too much into it but he wouldn't listen. He feels something needs to be done asap. I did let Craig know and forwarded all his texts to him and sent by email to HR- ck

2/11/21

I talked to Mike today about his issues with Kenny.  He said he does not physically run into him and talks to him very little but feels like Kenny is intentionally leaving the steering wheel up, seat all the way down and wiping out preset radio stations.  Mike did say that this was not an everyday occurrence but thinks Kenny does so that Mike has to think about him.  Mike also mentioned to me that he feels like Kenny could even sabotage the truck.  Mike also said that he thinks Kenny is racist to white people.  I told Mike that I have no evidence of either of these claims and neither does he.  Mike stated he has made a claim with the EEOC about the issue.  I told Mike I would be talking to Kenny to stop adjusting the seat, steering wheel and radio.   CB

2/16/21

I receive a text stating the following:

Hi Catlyn, Can you tell me why we don't have this policy at Crystal Flash, Craig has chosen a "no comment" to my question, Thanks. He then sent a picture of the marathon anti-harassment policy.

My response was as follows: We do have anti-harassment policies. I will have to direct you to HR for the policy in writing" - ck

2/18/21

Mike sent me a text that Kenny has not stopped adjusting seat, steering wheel, stereo.     CB

Pg. 5 of 5

EX-4 e

2/21/21

Received sarcastic text from Mike at 4am that we are doing a great job.  Kenny is allowing him 1 fm and 1 am channel.  This bothers the hell out of him.   Cb

2/21/21

Mike was complaining to Ian about the amount of loads Kenny was doing.  Claims Kenny is not pulling his weight or doing proper paperwork.

2/25

11:34 AM- Called Mike and let him know we were making some changes in Warren. He would be in 346/128 starting Thursday 3/4 without a slip seat partner for the time being (we are trying to hire someone). Garrett and Kenny will be slip seating. He was happy with this change.- ck

Mike called me due to not having allocation for a KAG load at marathon Detroit. I explained he will have to pull out of the rack and wait. He was not happy. Was told by KAG should be good to go in 5 mins and try again. I instructed Mike to get back in line and we should be good. Allocation still was not there. He called extremely upset because he had to unhook again and leave. I started explaining that he needed to write down the wait time so we can bill them for the hours and he just hung up on me- CK

Mike sent the following text to me at 12:35PM: "I thought about it, why am I being punished by being removed from the trailer and truck and not having a slip seat partner?" I did ignore this text and texted him allocation/load info about the load he was on. He then texted "As u wish, why am I being punished by being removed from the trailer and truck and not having a slip seat partner?" At this point I saw Krinn and let her know what Mike texted. She was going to call him. – ck

2/25/21

Mike sent me the same above text and I explained to him via text that we didn't have another night driver currently and that his current lease truck 52116 needed to remain double shifted to keep the miles up to avoid penalty.  Mikes reply was that he was being punished by being told to use another truck.    Cb

2/25/21

Mike sent me text at 9pm out of the blue stating that we don't make Mr. Walker change trucks because of his race. "I am not a dumb hic driving a truck, so with due respect that you don't give me please stop with the bullshit.        cb

Crystal Flash (Williams) 000056

EX - 5

Crystal Flash Caitlyn

11:10 AM

Load 3
Load mar det
Store 8833 Rochester hills
Check gallons

Caitlyn, did you receive the letter I sent you 3 weeks ago concerning Kenny's continued harassment?

Yes. I passed onto Craig and HR. They are handling it at this point Are there still issues?

EX - 6

IMG_1517.PNG

EX - 7

**Crystal Flash Caitlyn**

11:11 AM

Yes. I passed onto Craig and HR. They are handling it at this point. Are there still issues?

Of course, I've told u that I've tried my hardest to let his harassment go because it's not your job to deal with a bully's harassment. 2 months ago I tried to tell Kruger and he yelled at me stating "I don't have time to deal with Yours and Kenny's bullshit"

EX-8

Crystal Flash Caitlyn

11:12 AM

harassment. 2 months ago I tried to tell Kruger and he yelled at me stating "I don't have time to deal with Yours and Kenny's bullshit" and then hung up on me. Over the past 3 weeks or so and the latest was 2 days ago, Kenny has started pissing out of the truck right where I have to stand to get in the truck. Can I prove it was piss, No, but they have cameras back there now

IMG_1519.PNG

EX-9

Crystal Flash Caitlyn

No, but they have cameras back there now and it can be found out. Regardless of what it is, he put it there so I would have to think about him. I don't feel safe coming to work anymore because this is leading up to something bad for me.

CVED #28429
USDOT 237925

11:12 AM

IMG_1520.PNG

EX-10

IMG_1521.PNG

LTE   11:12 AM

Crystal Flash Caitlyn

me.

CVED #28429
USDOT 237926

Ok let me pass onto HR

9/16/21, 10:17 AM

< Crystal Flush Craig

PIC EX-11
1

Craig, I forgot to ask you if you told Kenny to stop his bullshit? ie Screwing with the seat, the radio, pouring or pissing right by the door ?

Let me rephrase it, did you tell him to stop what he is as doing before yesterday ?

R u there ?

9/16/21, 10:15 AM



Crystal Flash Craig

> Let me rephrase it, did you tell him to stop what he was doing before yesterday?*

> R u there ?

I am not in the office right now but yes I believe so.

Fri, Feb 12  12:53 PM



*Ex-12*

*Pic #*

*1555*

9/16/21, 10: AM



Crystal Flash Craig

With all due respect Craig. With the conversation we had yesterday, and you essentially advocating that everything Kenny's was doing was no big deal, so why would you tell him to stop it those harassing things to me weren't harassing

EX-13

PIC # 16



EX-13a

Crystal Flash Craig

**By the way, he hasn't stopped any of it!**

In my opinion they are not big issues but you obviously do and they are things that dont need to be done so that is why.

He's bullying me every single day and that doesn't bother you, and that bothers me.

In my opinion they are not big issues but you obviously do and they

IMG_1065.PNG

EX - 14

11:41 AM

Crystal Flash Text Video

Thank you for sending the videos to me. I will look into it further.

Management had these videos for months, and Caitlyn said she was turning it over to Craig and Human Resources last week, I wonder why you were kept in the dark ?

Told ya, he's not stopping.

IMG_1544.PNG

EX-15

Crystal Flash Text Video

11:42 AM

Told ya, he's not stopping.

What do you mean? Did something happen?

Still setting all the radio stations to one channel and airing up the seat to the point where a 500 lb Person couldn't make it go down an inch

It's still harassment and repetitive,










EX-16

EX-17

IMG_1546.PNG



EX-18

EX-19

Crystal Flash Craig

He's not stopping as on today, so I'm letting u know

Has anyone told him to stop, his continued behavior even today would suggest he'll no!

Wow,
Your doing a great job,







EX - 21

IMG_1548.PNG

Crystal Flash Text Video

11:42 AM

It's not just the seat, he has to have the whole radio,
Leave the seat where he uses it all day instead of inflating the air bag to hold a 500 lb. person.

1 question,
Have you, yes or no told him to stop his changing the presets on the radio?
Since he only listens to 1 station. 1 button is

EX - 22

Crystal Flash Text Video

11:42 AM    LTE

radio?
Since he only listens to 1
station, 1 button is
enough, he doesn't have
to have 12.

Mike, what time this
afternoon will work to
have a conversation?

There's nothing more to
say, well, yes or no, did
you tell him to stop or
not?

I would like to have a
conversation with you
this afternoon, what

EX-23

IMG_1550.PNG

Crystal Flash Text Video

Phone . . LTE 11:43 AM

**not?**

I would like to have a conversation with you this afternoon, what time will work. As I have said to you in the last conversation, I will not discuss conversations with other employees with you. I have also written to you in text that we are working on a solution.

Are you refusing to have a conversation with me this afternoon?

EX-24








Phone • ▪️ ▪️📶  11 43 AM

Crystal Flash Text Video

Are you refusing to have a conversation with me this afternoon?

Also, do not text me before 8:00 am during the work week and do not text me on the weekend unless you have a physical emergency.

I am working on the issues you have.

Why is it getting annoying and

80%

EX - 24a

IMG_1552.PNG

Crystal Flagg Text

11:43 AM

I am working on the issues you have.

Why is it getting annoying and bothersome, think about it if I did that at the same time everyday you went to work like I have for 7 months.

No, I don't want to discuss it anymore with you. I'll talk to Lisa from the civil rights department. She or her investigator should contact you very shortly.

80%

IMG_1553.PNG



▲ Phone ▪ ▪ᵢ  ᴵᴵᴵ                    11:44 AM

Crystal Flash Text Video

Why is it getting annoying and bothersome, think about it if I did that at the same time everyday you went to work like I have for 7 months.

No, I don't want to discuss it anymore with you. I'll talk to Lisa from the civil rights department. She or her investigator should contact you very shortly, have a nice day !

Delivered

EX-25

IMG_1068.PNG

Metro by T-Mobile 🛜 10:11 PM

Crystal Flash Craig

channel, all the rest is
his SINGLE RADIO
CHANNEL

Have you got the hint it
bothers the hell out of
me!

Well he pissed right
outside the driver door
and still playing the
radio games, please
send me the top officer
of our company's name
and address.









EX-26

IMG_1535.PNG

Crystal Flash Craig

radio games, please
send me the top officer
of our company's name
and address.

80%



2/26/2021

**EX - 27**

On Friday 2/26 at approximately 2:00 p.m.  Krinn Vandersloot and myself had a conversation via telephone with Mike Williams concerning his ongoing issues with Kenny Walker and Mike's anger issues. Mike started by asking if he could have their current trailer 6371 and Kenny use something else.  I told him I would think about this and let him know later.  Mike then started going on and on and round and round about his perceived issues with Kenny.  I asked Mike about recent and uncalled for anger issues with Caitlin in dispatch and an unprovoked text to me.  Mike admitted he had anger issues and that he did hang up on Caitlin and was upset at me.  He did not apologize for either instance.  When I asked if he needed or wanted help with the issues he back tracked and said he did not have anger problems.  I asked for Mike's commitment to moving forward and doing his job without bringing up Kenny or any of the issues they have had and not worrying about what equipment he was in.  Mike committed to doing his job without issue.

                                                                Craig Broekhuizen

CRYSTAL FLASH STOPPED DOCUMENTING IN MY PERSONNEL FILE, AFTER TELLING ME TO SHUT-UP OR GO TO ANGER MANAGEMENT. NEVER ADMITTED ANGER PROBLEMS!

Crystal Flash (Williams) 000071



EX-28

March 11, 2021

Michael Williams
50018 Degas
Chesterfield, MI  48051

Dear Mr. Williams,

This letter is to acknowledge receipt of your letters on March 4, 2021 and March 9, 2021. Please know I will ensure someone follows up with him and that your concerns will be investigated.

Sincerely,

Tom Olive
President/CEO

**A 100% EMPLOYEE-OWNED COMPANY**

EX-29

Crystal Flash Craig

Due to the claim you filed against CF and the resulting ongoing investigation we will not be able to work you tomorrow.

So I'm fired, retaliation for the complaint, retaliation for filing a complaint pertaining to violations of civil rights is absolutely illegal.

3/25/2021   Gmail - Investigation Findings

 **Gmail**

Michael Williams <mw78295@gmail.com>

## Investigation Findings

**EX-30**

1 message

**Krinn Vandersloot** <kvandersloot@crystalflash.com>
To: "mw78295@gmail.com" <mw78295@gmail.com>

Thu, Mar 25, 2021 at 4:17 PM

Dear Mike,

We have conducted an investigation, through an outside firm, into your claim of harassment and discrimination.  The findings from this investigation are the claim has no validity.

Due to the details found by the investigator during the investigation, please see the attached paperwork.  This is to follow-up with the conversation held today regarding the termination of your employment.  This will be mailed via Certified Mail as well.

## Krinn VanderSloot-SHRM-CP

Director of Human Resources

**Crystal Flash** / 100% EMPLOYEE OWNED

   616-365-0570      616-375-6484      616-365-3240 **crystalflash.com**



**SUpstairs21032516210.pdf**
68K

EX-31

## Disciplinary Action/Counseling Memo

*Please fully complete this form and check the appropriate boxes below.*

On **3-25-21** an interview with **Mike Williams** was held regarding:
    Date                                        Employee

☐ Tardiness                          ☐ Personal untidiness          ☐ Wasting time
☐ Excessive/unauthorized absence     ☐ Profanity                    ☐ Carelessness
☐ Customer complaint                 ☐ Action detrimental to morale ☐ Disregard for safety
☐ Discourtesy                        ☐ Harassment                   ☐ Quality of work
☑ Lack of cooperation                ☐ Theft                        ☑ Insubordination
☐ Disregard of established           ☐ Other (explain)_____     ☐ Failure to follow
    company policy/procedures                                            instructions

Fully explain item(s) marked. Give time and date of specific incident(s):

> Mike was scheduled to meet an independent investigator hired by Crystal Flash at the investigator's company office on Friday 3-12-21 at 10 a.m. to discuss the claim and charges he was allegedly bringing on CF. Mike was given the day off by operations in order to make the meeting. Mike refused to go and meet the investigator.

Has the employee been warned previously?          ☐ Yes  ☐ No     Date _____

Has a previous counseling report been completed?  ☑ Yes  ☑ No     Date _____

Previous corrective effort:   ☐ Verbal warning
                              ☑ Written warning with_____ day(s) suspension
                              ☐ Termination

Date reviewed this situation with employee: _____     Job in jeopardy? ☑ Yes  ☐ No
(No more than 30 days from the date of this incident)

*If you should fail to meet the attendance or performance standards set by Crystal Flash, or if you are guilty of an act of misconduct, any of the following actions may be taken: Written warning, 3-day suspension no pay, or Termination.*

_____              Craig Broekhuizen  Digitally signed by Craig Broekhuizen
    Employee Signature                                   Date: 2021.03.26 14:36:37 -04'00'
                                             Manager Signature

Employee Statement (optional):

> 

_____              _____
    Employee Signature                          Date

rev 10-19
Distribution: Original to Employee File - Human Resources; copy to employee; FAX to District Manager, Division President
*Use extra sheets for additional remarks and include in the FAX*

Crystal Flash (Williams) 000041

*EX - 32*

## Disciplinary Action/Counseling Memo

*Please fully complete this form and check the appropriate boxes below.*

On **3-25-21** an interview with **Mike Williams** was held regarding:
Date       Employee

☐ Tardiness    ☐ Personal untidiness    ☐ Wasting time
☐ Excessive/unauthorized absence    ☐ Profanity    ☐ Carelessness
☐ Customer complaint    ☒ Action detrimental to morale    ☐ Disregard for safety
☐ Discourtesy    ☐ Harassment    ☐ Quality of work
☐ Lack of cooperation    ☐ Theft    ☐ Insubordination
☐ Disregard of established    ☐ Other (explain)_____    ☐ Failure to follow
     company policy/procedures                    instructions

Fully explain item(s) marked. Give time and date of specific incident(s):

Due to the findings from an independent investigator hired by Crystal Flash regarding Mike's behavior and actions regarding a law suit he was bringing on CF it has been decided to terminate Mike's employment immediately due to actions detrimental to morale.  Mike was given off Thursday 3/25 in order to get the results from the investigation.  Mike will be paid 12 hours for not working 3/25. He will also be paid out any remaining PTO time he has accumulated YTD.

Has the employee been warned previously?    ☒ Yes ☒ No    Date _____

Has a previous counseling report been completed?    ☐ Yes ☐ No    Date _____

Previous corrective effort:    ☐ Verbal warning
                        ☐ Written warning with_____ day(s) suspension
                        ☒ Termination

Date reviewed this situation with employee: _____    Job in jeopardy? ☐ Yes ☐ No
(No more than 30 days from the date of this incident)

*If you should fail to meet the attendance or performance standards set by Crystal Flash, or if you are guilty of an act of misconduct, any of the following actions may be taken: Written warning, 3-day suspension no pay, or Termination.*

_____    Craig Broekhuizen  Digitally signed by Craig Broekhuizen Date: 2021.03.25 14:52:57 -04'00'
       Employee Signature                        Manager Signature

Employee Statement (optional):

_____          _____
       Employee Signature                       Date

rev 10-19

Crystal Flash (Williams) 000051

**Krinn Vandersloot**

EX-33

| | |
|---|---|
| **From:** | Craig Broekhuizen |
| **Sent:** | Friday, February 26, 2021 10:33 AM |
| **To:** | Krinn Vandersloot |
| **Subject:** | FW: Couple of split seat driver situations |

Email from Ian about Mike.

**From:** Ian Heyboer <ianh@crystalflash.com>
**Sent:** Sunday, February 21, 2021 9:32 AM
**To:** Caitlin Kozal <ckozal@crystalflash.com>; Craig Broekhuizen <craigb@crystalflash.com>
**Cc:** Dennis Topolinski <dennist@crystalflash.com>
**Subject:** Couple of split seat driver situations

Hey,

Wanted to bring these to your attention, I am sure you are aware of one of these and maybe not the other.  It is tough for those of us who come on the weekends to work with these guys to hear this stuff and attempt to deal with it.  Part of me says these guys need to mind their own business and leave the other guy alone and part of me says that things get blown out of proportion.

1. Mike vs Kenny: this is the one you know about.  I had Mike grilling me yesterday about Kenny only getting 1-2 loads done.  I looked back and I saw he is always doing 2 and maybe 3.  Then I realized that Mike was looking at the documents on their phone that come over vector and he saw that Kenny only send over 1 load.  So, he was angry that Kenny isn't pulling his weight and that he's not doing his paperwork properly.  I really want Mike to mind his own business because he has his own shortcomings as we all know.  I'm sure Kenny has plenty to complain about as well, I don't really hear that…I'm thinking that frustration is aimed more at a night dispatcher.



I think in all these situations we have some drivers who want to have decision or opinion power in the operational aspects of our business. They think they know better.  Frankly, it is challenging to deal with guys like that because generally they don't see the bigger picture and don't know the workload.  Hopefully over time some of these things can get smoothed out.

Crystal Flash (Williams) 000072

Some of this stuff is petty to say the least and some of it is frustrating and some of it is actually a core issue.  There's a lot of personalities and motivations, but definitely some situations to deal with or keep an eye on at the very least.  The best case scenario is that these drivers worry about what they need to take care of and not what other guys are doing, but I think we can agree that we don't live in the best case all the time.

Thanks,

Ian Heyboer
Transport Dispatch Supervisor

**Crystal Flash** / 100% Employee Owned
  616-447-3537    616-558-6216    616-365-3249
**crystalflash.com**

Crystal Flash (Williams) 000073

EX-34

**Jody M. McLeod, Esq.**

Founder & Principal

McLeod Legal Solutions, PLLC

jody@mcleodlegalsolutions.com

248.930.1292

**The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.**

Jody Mcleod <mcleojm@outlook.com>                    Thu, Mar 18, 2021 at 1:38 PM
To: Michael Williams <mw78295@gmail.com>

Mike:

Thank you but the meeting **will be held where I have scheduled it.**  Please review the invite for time and location.

Secondly, the law in Michigan requires both parties to a conversation to agree that a conversation may be recorded.  I nor Crystal Flash agree to that so no recording will be made of any interview, if you decide to appear.  What is important is that I made arrangements for this interview to be held during your work hours with adjustments to your deliveries as well,

https://mail.google.com/mail/u/0?ik=fe881ab2a7&view=pt&search=all&permthid=thread-f%3A1694492734504019260&simpl=msg-f%3A16944927345...    2/3

Michael Williams <mw78295@gmail.com>                    Fri, Mar 19, 2021 at 12:06 PM
To: Jody Mcleod <mcleojm@outlook.com>

I can record anyone without their knowledge where I'm part of the conversation, (say's ther Michigan State Police and Macomb County Prosecutor) eavesdropping law.
If its recorded, there will be no interview, period

Have a nice day !

Michael Williams

[Quoted text hidden]

Michael Williams <mw78295@gmail.com>                    Fri, Mar 19, 2021 at 12:08 PM
To: Jody Mcleod <mcleojm@outlook.com>

Correction, If it's **NOT** recorded they'll be no interview.
[Quoted text hidden]

2/14/24, 7:44 PM                                    Gmail - MDCR# 616734

 **Gmail**   EX-35

**Michael Williams <mw78295@gmail.com>**

## MDCR# 616734

2 messages

**Barkley, Valerie (MDCR)** <BarkleyV@michigan.gov>                    Fri, Feb 9, 2024 at 5:09 PM
To: Michael Williams <mw78295@gmail.com>
Cc: "Osikowicz, Bryant (MDCR)" <OsikowiczB1@michigan.gov>

Good Afternoon Mr. Williams,

The investigation against your former employer, Crystal Flash, MDCR #616734 / EEOC# 23A-2021-00395C, has concluded and dismissal has been recommended due to insufficient evidence being found to support the allegations of hostile environment on the basis of race and insufficient evidence of discharge on the basis of race and/or retaliation.

More specific details are as follows:

**a** Hostile Environment/race- The evidence did not reveal you were subjected to any comments because of your race, or that the conduct you alleged your former slip seat partner subjected you to (adjusting truck seat, steering wheel, radio stations, a liquid substance outside the truck, verbal assault), was done because of your race.

**b** The evidence did not reveal that the conduct you alleged interfered with your work performance or terms and conditions of your employment, or that the conduct was severe or pervasive to create a hostile environment based on race.

**c** The evidence showed Respondent took appropriate action when you made internal complaints. Investigations were completed and at one point, you and your former slip seat partner were separated to try to alleviate any future issues and race was not a factor.

Discharge/race, retaliation

**d** You did not provide any comparatives to show you were treated less favorably than a co-worker of another race who engaged in similarly situated conduct.

**e** You did not provide sufficient evidence of pretext to show that your race was a factor in your discharge.

**f** Insufficient evidence of retaliation was found despite the text message that was submitted as evidence. The message was reviewed, and multiple interviews were conducted which revealed additional context surrounding the message.

My supervisor, Mr. Osikowicz, has reviewed the investigative report and concurred with the findings. Accordingly, this case is being dismissed and closed. Once the case is closed, you will receive a Notice of Disposition by mail. That document will have information regarding our reconsideration process included should you disagree with the findings and wish to have our Reconsideration Attorney review the case. If you wish to submit a FOIA request, you may do so when the case is closed, please refer to our website

12/17/22, 7:48 PM                                Gmail - email #3 from Michael Williams

 **Gmail**

Michael Williams <mw78295@gmail.com>

## email #3 from Michael Williams
2 messages

**Michael Williams** <mw78295@gmail.com>                          Tue, Feb 2, 2021 at 8:21 AM
To: taylorl10@michigan.gov

    Please contact me if you have any questions or concerns.

    Thank You
    Michael D. Williams

               Scan_20210202 (8).jpg
               1281K

*EX-36*

---

**Michael Williams** <mw78295@gmail.com>                          Sun, Feb 7, 2021 at 6:58 PM
To: "Taylor, Lisa (MDCR)" <taylorl10@michigan.gov>

Thank you for the update. There's another problem, he's urinating out of the truck and right where I have to stand to
unlock the door, he just won't let up on the harassing.

On Wed, Feb 3, 2021 at 2:35 PM Taylor, Lisa (MDCR) <taylorl10@michigan.gov> wrote:

    Hello Mr. Williams,

    Your documents have been received and is in the process of being reviewed. Once the
    complaint has been approved, it will be forwarded to you for your review, signature and
    notary.

    Thank you,

    **From:** Michael Williams <mw78295@gmail.com>
    **Sent:** Tuesday, February 2, 2021 8:22 AM
    **To:** Taylor, Lisa (MDCR) <taylorl10@michigan.gov>
    **Subject:** email #3 from Michael Williams

 Gmail

**Michael Williams <mw78295@gmail.com>**

## additional statement
1 message

**Michael Williams <mw78295@gmail.com>**                                    Fri, Feb 12, 2021 at 5:37 PM
To: "Taylor, Lisa (MDCR)" <taylorl10@michigan.gov>

Ms. Taylor,
My Boss and I had a conversation about what Mr. Walker is continuing to do and what's been going on for months. They
have known for months and yesterday I found out why nothing has been done to stop this. My director of Transportation
(Craig) thought it was no big deal. essentially just suck it and deal with it. He confirmed that in 3 text messages to me
today. I would like to get those to you when I learn how to. Here is a letter I wrote detaining what took place.

Thank You
Michael Williams

**Scan_20210212 (2).jpg**
1975K

EX-37

CRAIG SAYS
"IT'S NO BIG DEAL,
SUCK IT UP AND DEAL
WITH IT!"

12/17/22, 7:55 PM                          Scan_20210212 (2).jpg

These discriminatory actions have been taken against me because my employer is treating another employee differently because he's an African American and I'm white. This African American (Mr. Kenny Walker) has been harassing me for months after he assaulted me in Feb. 2020. The company has been given notice of the harassing behavior by Mr. Walker for months and they refuse to do anything about it just because he's black and uses his race against the management. I've been informed by at least 15 long time employee's about how the company is literally intimidated by a racists accusation that they refuse to enforce normal and reasonable company policies against (Mr. Walker) to which anyone else would be enforced. No one is nieve enough to believe that they would be fired immediately if they assaulted another employee, or tell the company "I won't do pump off's". These harassing actions by Mr. Walker has been occurring for months and months and I've tried to just let it go because I had hoped he would grow up or maybe moved to a different terminal.

Before I ever met Mr. Walker I was warned about him and how he uses his race to get what he wants, and that was by long time employee's. I asked Caitlyn and Craig about what I've been told and is there anything I should know about Mr. Walker, they both replied "no". I believe Mr. Walker is tormenting, and harassing me because he doesn't like to have to share this company truck with a white person. Shortly after Mr. Walker verbally assaulted me in person, he sent warning text messages to which I turned over to Craig (my supervisor) I did somethings differently (referring to placement of paperwork) and he just wasn't going to tolerate a white person (me) to tell him no, this took place in 2/2020. After I reported it to the company, they refused to say what they were going to about it, but Mr. Walker was right back to work and I was never told anything. I tried to go on but ever since Mr. Walker has been doing these annoying and harassing things such as turning up the volume on the radio to full blast when he leaves the truck so when I turn on the truck in the morning, well let's just say it's a loud experience directed at me. He (Mr. Walker) would change all of the preset radio stations to 1 radio station, only a sick person would do that, constantly. He puts the air lift seat on the floor by letting all the air out of the system, there is no leak in the air system because I sit on it all day and it remains exactly where I had it at the start of my day. Mr. Walker just has to make sure I'm being reminded of him every morning and how he can get to me.

I've been trying to tell my supervisors about this continuous harassment by Mr. Walker but they just don't want to here about it. For the last 3 weeks or so, Mr. Walker has been urinating right by the truck door so I would have to walk in it to get into the truck. These are actions from a serious troubled individual to which even if the company may have said something to him, I'm kept in the dark and told nothing. These actions and threats by Mr. Walker are leading up to something drastic and it will not be good for me regardless. I don't feel safe about going to work or the truck I'm driving hasn't been tampered with in a way that can't be detected by a walk around inspection that I do.

I don't believe that Crystal Flash is racist against me, I believe Mr. Kenny Walker is racists against me and the company is discriminating against me because they are intimidated to do little against Mr. Walker which leaves me out on that dangerous limb alone and ignorant which is exactly what Mr. Kenny Walker wants.

2.

12/17/22, 7:44 PM                                    Gmail - Information you request

 Gmail                                    **Michael Williams <mw78295@gmail.com>**

## Information you requested
1 message

**Michael Williams** <mw78295@gmail.com>                      Tue, Feb 2. 2021 at 8:35 AM
To: taylorl10@michigan.gov

Witnesses who seen, and still may hold the threatening text messages from **Ken Walker.**   **EX-3Ba**

My immediate boss is **(Caitlin Kozal  1-616-558-3761)**
Transportation Manager **(Craig Broekhuizen 1-616-890-8628)**
Truck Driver **(Erik 1-313-622-1973)**
Truck Driver **(Dave Reed 1-734-915-5658)**

This is where I report to work everyday
Terminal Yard **(Star Truck Rentals, 13875  E. 10 mile Rd.  Warren, Mi. 48089)**

12/17/2, 8:21 PM                                Gmail - Not contacted by the investigator

Mr. Williams,

You either misunderstood or misconstrued my email. Retaliation can take the form of an adverse employment action based on a person's engagement in protected activity (including providing a witness statement in someone else's internal complaint or government agency investigation) or through opposition or objection of an unlawful practice or action.

**EX - 39**

**39** I did not say anything about your text other than it may need to be authenticated. There are ways text messages, calls, etc. can essentially be fabricated. There are apps available that make this possible. I am not saying or suggesting you did this; however, if the text was contested by the Respondent, authenticating the text (confirming through a phone provider that you sent/received the message) may be necessary.

**40** I am aware you would have spoken to the investigator if you could record the interview. Recording is not protected and it was your choice not to attend the interview. It is the respondent's choice whether to use that lack of participation and you not providing an interview or a statement as part of their proffered legitimate non-discriminatory reasons for the action taken against you (discharge).

**EX - 40**

Since the respondent has provided legitimate non-discriminatory reasons, your burden is to prove pretext. That the respondent's reasons are untrue, false, that your protected bases were the actual or underlying reasons for the action taken.

MDCR doesn't have any authority over a respondent's internal investigation or how a respondent addresses any violations of work rules/policies. If you offered witnesses that the investigator didn't talk to, there is nothing we can do about that.

**41** As for evidence. witnesses, etc., as stated previously, if you want to ensure Mr. Karega has the information, it is best to send everything to him. I did not prepare the file he received, nor have I ever physically had it in my possession. I cannot be certain what documentation was received. My suggestion, if it isn't too much to ask, is to just forward or resend it to him.

**EX - 41**

Your case has not taken long. MDCR and EEOC sometimes have cases that take years depending on the complexity of issues, voluminous amounts of documentation/witnesses, amongst a host of other factors, not to mention we are still remotely working because of the global pandemic and that has caused its own set of delays and challenges. MDCR has been working to address cases oldest to newest and frankly, there are cases older than yours that aren't being addressed as quickly as yours. I mean no disrespect at all, but if this is problematic to you, please contact your local legislators and tell them to make civil rights a priority. We have the smallest state department due to budget constraints and people in power not making civil rights a priority. We have roughly 30 investigators that cover statewide issues, with well over 2000 cases currently, and we cover everything-housing, employment, education, public service, public accommodation, racial profiling, etc.

When I have to stop working on cases or directing enforcement staff and answer emails like yours, it is not conducive to productivity which is why it took a couple days to reply to your various concerns. I have always been very prompt in my many replies to you.

**42** In conclusion, your case is being investigated and will be given the same attention and consideration as others. This does not happen overnight and may take time. Should you decide you no longer wish to proceed with your administrative options, you may withdraw your case and seek legal counsel to proceed in court.

[Quoted text hidden]

**EX - 42**

**Michael Williams** <mw78295@gmail.com>                          Thu, Sep 23, 2021 at 4:19 PM
To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

7/13/23, 10:08 AM  Gmail - question 

explanation. If the finding is sufficient evidence, the case will be moved to our Office of Legal Affairs for conciliation (which is another chance at settlement). If sufficient evidence exists and the case does not resolve at conciliation, the Office of Legal Affairs will conduct legal review of the case and determine whether to issue a charge of discrimination or to dismiss the claim. If charged, the case is filed with the Michigan Office of Administrative Hearings and Rules to be heard before an Administrative Law Judge. The ALJ makes a recommendation to the Michigan Civil Rights Commission. There is no jury.

Since you indicated a jury preference, if the case does not resolve at this stage and before a finding is issued, perhaps you may wish to seek private counsel to assess whether you prefer to file in court and if you do, you may withdraw your case. Your case has been with us long enough to secure a Notice of Right to Sue and you will have met your requirement to exhaust your administrative recourse. Keep in mind, once MDCR has determined a finding, a case cannot be withdrawn.

## EX- 43

I hope this is useful information.

[Quoted text hidden]

**Michael Williams** <mw78295@gmail.com>                                                    Thu, May 11, 2023 at 9:20 PM
To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

first, let me say this as politely as possible. I believe the MDCR's hands are tied to charging this company regardless of a settlement or not,
and here's why, **It's the smoking gun admission.** This is as clear as it gets when describing the Michigan State and U.S. Federal Law on retaliation. This is a stand alone Law period. Now I'm not sure if you have ever read the law, but it's attached to the smoking gun text message.
But just for a moment, let's say you decide not to charge Crystal Flash, then If I'm forced to get an attorney, I will have every right to file suit against the MDCR for not enforcing Michigan's Civil Rights Laws. So the question is, why would you want to make the MDCR a defendant in this case. So, lets forget about that for the moment.

second, I was not asking you to enforce the Right to Know Act, I already enforced it 22 months ago myself, you might ask them why they removed it from my personnel file.

third, regarding the text message, I don't think you know what you're talking about. Once I presented these text messages as evidence to the MDCR and if you were suspicious about them, then you should have done something about it, you had every opportunity, (27 months and still counting) as a Lawyer to subpoena those phone records. I, on the other hand, had **no authority whatsoever** to subpoena for those phone records. A private citizen can't subpoena phone records from another private citizen without a court order. I would have been FORCED to remove the case from the MDCR to get a court order.
So the text message is a smoking gun and it was your responsibility to verify them, not me, if you didn't, that might cost you your job, I don't know, but one thing I do know, and I don't think you care whatsoever that it might be the MDCR's responsibility to confirm or not.

**Question**: do you question my allegation that I was assaulted twice by Kenny Walker? As I said before, how can I prove it when they controlled all documentation about it? It's been removed from my personnel file.

and finally, **removing the case from the MDCR is not going to happen, the process will continue until the end.** I've already documented to my Rep. DeBoyer months ago about my Nostradamus prediction, and here it is, I have expected the MDCR and it's Racial Equity Agenda would
refuse to enforce Michigan and Federal Law because I'm a white victim and the perpetrator was black and with everyone in the MDCR wearing their Racial Equity lens, would conclude that because I'm white, I somehow deserved the harassment and the two assaults while on the job. That's what took you 27 months to even suggest talking to witnesses, and now your trying to lay the verification of the smoking gun text message at my feet instead of your own. I've read the Racial Equity toolkit on the MDCR website at least 3 times, and I concluded that not only has the MDCR interfered, delayed intentionally to the point that witnesses memories would fade, and evidence would be impossible to retrieve or obtain (phone records),
but the Respondent was also following the Racial Equity Toolkit, and they also were wearing their racial equity lens when they allowed me to be assaulted twice by a black man, harassment for 7 months by a black man. The actions that have been taken and conducted by the MDCR is
described perfectly in the RE-Toolkit.

Oh yea, one question, where's Mr. Karega been, you stated he's been the investigator for 21 months, when did you
got this case to interview witnesses?

7/21/23, 10:19 AM ⬤                              Gmail - I want to know? ⬤

To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

Also, I hope you don't mind being on you tube and Rumble right along with The Disgraceful MDCR.
The whole case is going to be discussed with real names and places of business and emails and everything else.
Every single person needs and will be exposed to this sham.
I'll let you know where to find it for your viewing, but just a heads up, you're not going to like it.

Michael Williams
[Quoted text hidden]

*EX - 44*

**Michael Williams** <mw78295@gmail.com>                              Thu, Jul 20, 2023 at 10:10 AM
To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

How do you interview witnesses without requesting interviews from my witnesses, essentially exposing them to retaliation
by the company?

Does your experience tell you that a witness of an incident has an accurate memory after 3 years?

Mike Williams
[Quoted text hidden]

**Michael Williams** <mw78295@gmail.com>                              Thu, Jul 20, 2023 at 11:11 AM
To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

Justify these FACTS please, something.

Check the facts please before you make statements, for instance it takes **Ohio 1 year** to complete a civil rights
investigation,
**The EEOC (10 months)**, **Pennsylvania (6 months)**, **Illinois 1 year**, **Indiana 6-months**,

# Michigan between 6-88 months = **7.3 years on average 41 months**

**For non-Blacks, the average duration was 52 months, = 4yrs. and 4 months**
# For Blacks, it was 34 months, = 2 years 10 months

Source:
https://www.law.umich.edu/special/exoneration/Documents/UTM%20Michigan.pdf

COMPENSATION UNDER THE MICROSCOPE: **MICHIGAN**
How Long Does It Take to Resolve State Compensation And **Civil Rights Claims**?
By Jeffrey S. Gutman George Washington University Law School

The results are set forth in Table 1 below:

| Case | Number | Range | Average |
|---|---|---|---|
| State Compensation | 62 | 1 – 52 months | 16.7 months |
| Civil Rights | 28 | 6 – 88 months | 41 months |

Table 1 As of mid-February, 2023, there were 62 Michigan exonerees who were awarded state statutory compensation.
The time between filing and dismissal ranged between one month and 52 months. The average was 16.7 months. **It took**



the 16 exonerees who were not Black an average of **18.1 months** to resolve their cases compared to **16.2 months** for the 46 Black exonerees.

There were 32 Michigan exonerees who obtained civil rights recoveries. One was apparently resolved without a lawsuit. I could not obtain definitive data on three cases arising from the Benton Harbor scandal. For the remaining 28 Michigan exonerees, the duration ranged from 6 months (the only case filed in state court) to 88 months. The average was 41 months. **For non-Blacks, the average duration was 52 months. For Blacks, it was 34 months.**

## Investigation Process | Ohio Civil Rights Commission - Ohio.gov

○ ohio.gov

https://civ.ohio.gov › gov › civr › how-to-file-a-charge

The Ohio Civil Rights Commission has **one year** to complete the investigation. **(Ohio's)**

How long does a typical EEOC
investigation last?

## approximately 10 months

How long the investigation takes depends on many factors, including the amount of information that needs to be gathered and analyzed. On average, we take approximately 10 months to investigate a charge. We are often able to settle a charge faster through mediation (usually in less than 3 months).

**EEOC's**

How long does it take for OCR to
investigate a complaint?

## within 180 calendar days

completing investigations? within 180 calendar days after the date a complaint is filed.

7/21/23, 10:19 AM  Gmail - I want to know?

**(Pennsylvania's)**

## Filing a Discrimination Claim - Indiana

The Gittes Law Group

https://gitteslaw.com › Your Rights

On average, it takes the EEOC **nearly 6 months** to investigate a charge.

**(Indiana)**

## Complaint Process - Illinois Department of Human Rights

https://dhr.illinois.gov › Filing a Charge

Mar 15, 2022 — The Illinois Human Rights Act requires that the IDHR conclude all proceedings and make a finding **within 365 days of** your Charge being filed

**(Illinois)**

**Michael Williams** <mw78295@gmail.com>                                Thu, Jul 20, 2023 at 11:13 AM
To: Philip Kraft <PKraft@house.mi.gov>


---------- Forwarded message ---------
From: **Michael Williams** <mw78295@gmail.com>
Date: Thu, Jul 20, 2023 at 11:11 AM
Subject: Re: I want to know?
To: Barkley, Valerie (MDCR) <BarkleyV@michigan.gov>


[Quoted text hidden]

8/3/23, 6:26 PM                                    Gmail - Where are we at getting witness statements?

**Notice of Confidentiality: The transmitted information is for the exclusive use of the intended recipient(s). If you are not the intended recipient, please be aware that any review, use, dissemination, distribution, or copying of this communication, in whole or in part, is prohibited. If you received this communication in error, please notify us immediately by e-mail reply or by phone (800-482-3604), delete the communication and destroy any copies.**



**From:** Michael Williams <mw78295@gmail.com>
**Sent:** Tuesday, July 25, 2023 2:14 PM
**To:** Barkley, Valerie (MDCR) <BarkleyV@michigan.gov>
**Subject:** Re: Where are we at getting witness statements?

---

**CAUTION: This is an External email. Please send suspicious emails to** abuse@michigan.gov

---

[Quoted text hidden]

**Michael Williams** <mw78295@gmail.com>                                 Wed, Jul 26, 2023 at 8:30 AM
To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

and if you don't mind me asking, how long do you plan on giving them time to respond and get these interviews scheduled and done?

The last time you gave them time to respond it was close to 50 days, so how long?

Michael Williams
[Quoted text hidden]

**Michael Williams** <mw78295@gmail.com>                                 Thu, Jul 27, 2023 at 2:30 PM
To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

could you answer the question above?

Mike Williams
[Quoted text hidden]

**Michael Williams** <mw78295@gmail.com>                                 Mon, Jul 31, 2023 at 10:28 AM
To: "Barkley, Valerie (MDCR)" <BarkleyV@michigan.gov>

I'm still waiting on the progress of getting witness statements, it's been a week.

Michael Williams
[Quoted text hidden]

**Barkley, Valerie (MDCR)** <BarkleyV@michigan.gov>                       Mon, Jul 31, 2023 at 10:41 AM
To: Michael Williams <mw78295@gmail.com>

August 8th and 10th

**From:** Michael Williams <mw78295@gmail.com>
**Sent:** Monday, July 31, 2023 10:28:48 AM

 **OAG**

# Report Summary



*Performance Audit*
*Selected Activities Related to Investigation*
*   Timeliness and Complaint Intake*
*Michigan Department of Civil Rights*
*   (MDCR)*

**Report Number:**
**151-0200-22**

**Released:**
**August 2023**

> MDCR's primary purpose is to receive, initiate, and investigate allegations of discrimination in employment, education, housing, public accommodation, and public service based on an individual's religion, race, color, national origin, genetic information, sex, age, height, weight, familial or marital status, or disability. MDCR receives complaints via its website, telephone, e-mail, mail, and other sources and gathers information necessary to determine whether to assign the complaint for a civil rights investigation, as required by law. For the 18-month period ended June 30, 2022, MDCR received 9,003 complaints and assigned 1,867 complaints for investigation.

| Audit Objective | | | Conclusion |
|---|---|---|---|
| Objective 1: To assess the effectiveness of MDCR's efforts to timely complete civil rights complaint investigations. | | | Not effective |

| Findings Related to This Audit Objective | Material Condition | Reportable Condition | Agency Preliminary Response |
|---|---|---|---|
| MDCR completed investigations of alleged civil rights complaints, on average, 19 months after receipt of the complaint, which significantly exceeded its established six-month goal. MDCR's lack of certain actions and periods of investigation inactivity resulted in significant delays in 62% of the investigations we reviewed (Finding 1). | X | | Agrees |

| Audit Objective | | | Conclusion |
|---|---|---|---|
| Objective 2: To assess the sufficiency of MDCR's efforts to assign civil rights complaints for investigation, when required. | | | Sufficient, with exceptions |

| Findings Related to This Audit Objective | Material Condition | Reportable Condition | Agency Preliminary Response |
|---|---|---|---|
| MDCR's management did not approve 31% of sampled complaint assignment decisions and did not require secondary approval for appealed complaint assignment decisions (Finding 2). | | X | Agrees |

| Findings Related to This Audit Objective *(Continued)* | Material Condition | Reportable Condition | Agency Preliminary Response |
|---|---|---|---|
| MDCR did not have a process to reconcile all e-mailed civil rights complaints and did not have a process to track and monitor all incoming telephone contacts (<u>Finding 3</u>). | | X | Agrees |
| MDCR did not document its verbal intake interview with the claimant for 15% of applicable complaints reviewed; interview documentation serves as MDCR's account and record of the claimant's allegations and the basis of MDCR's intake decision (<u>Finding 4</u>). | | X | Agrees |
| Although MDCR had a key goal of outstanding customer service, it did not establish formalized processes for receiving, documenting, addressing, and analyzing customer service complaints (<u>Finding 5</u>). | | X | Agrees |
| MDCR did not request the Department of Technology, Management, and Budget to remove or disable Civil Rights Information System (CRIS) access in a timely manner for 37% of the CRIS users who permanently or temporarily departed employment (<u>Finding 6</u>). | | X | Agrees |

**Obtain Audit Reports**

Online: audgen.michigan.gov

Phone: (517) 334-8050

Office of the Auditor General
201 N. Washington Square, Sixth Floor
Lansing, Michigan 48913

**Doug A. Ringler, CPA, CIA**
Auditor General

**Laura J. Hirst, CPA**
Deputy Auditor General

**The Detroit News**
SERVING MICHIGAN SINCE 1873

EX - 47

## MICHIGAN

# Michigan civil rights agency saw 'significant delays' in most cases reviewed, audit says



**Beth LeBlanc**
The Detroit News

Published 10:37 a.m. ET Aug. 24, 2023

*Lansing* — A state agency tasked with investigating civil rights complaints took an average of 19 months to complete reviews of alleged violations and experienced significant delays in 62% of its investigations, according to an audit released Thursday.

The agency also lacked processes to adequately track email complaints, telephone contacts, and customer service complaints, the Office of Auditor General concluded.

The audit found the department's overall complaint process "not effective," noting the department was taking an average of 13 months longer to complete an investigation than its stated goal of six months.

"MDCR needs to significantly improve its timeliness in completing civil rights complaint investigations to bolster the public's confidence regarding expeditious enforcement of the state's civil rights laws," the audit said.

In its response to the audit, the department said it lacked a sufficient number of investigators. On average, each of its investigators had 80 to 100 cases assigned to them at any given time.

The department said it had requested the audit and was not surprised by the findings, but is hopeful funding in the new budget would help to address some of the issues identified.

"We agree with the audit results and view their report as a roadmap, pointing the way to where we need to make improvements, and many of those efforts are already underway," department Executive Director John E. Johnson Jr. said in a statement.

The audit comes as the agency attempts to clear a large backlog of complaints and prepare for a heavier workload with the passage of additional anti-discrimination policies spurred by court decisions and legislative action over the past year.

The department also is facing a lawsuit from the city of Grand Rapids that argues delays in the department's investigations related to city police were enough to dismiss several pending complaints against Grand Rapids. The litigation, if successful, could have a ripple effect on other civil rights investigations that have dragged on for more than three years.

In July, the department estimated its complaint backlog stood at about 1,400, even as cases increased from a July 2022 Michigan Supreme Court decision and later statutory change that cemented anti-discrimination protection for gay and transgender individuals in Michigan's Elliott-Larsen Civil Rights Act.

The budget beginning Oct. 1 will infuse the department with an additional $10.1 million, including about $5.7 million for an added 34 full-time employees to address the complaint backlog — a gush of funding the department is hoping will help it address the weaknesses found in the audit.

"The new funding for FY 2024 is the first time in many years that the legislature has recognized our need for additional funding to do the work we are mandated to do under the Michigan Constitution," Johnson said Thursday.

During the 18 months reviewed ending June 30, 2022, the Department of Civil Rights completed 2,096 complaint investigations and had 2,405 ongoing investigations.

Between Jan. 1, 2021 and June 30, 2022, the department completed 8% of its cases within the six month time frame. Another 8% of the investigations completed during that time frame had taken more than three years.

In one sampling of 39 cases, the department failed to contact a complainant for an initial interview in five of those cases for 141, 160, 279, 288 and 529 days. The department's goal is to contact the claimant with five days, but the average among those 39 cases was 19 days.

The audit also found the department was lacking a needed review by management for some of its assignment and denial decisions at the front end of the complaint process. Of the 54 complaints sampled, 17 assignment decisions, or 31%, lacked management approval; 15 of those 17 were denials.

The Michigan Department of Civil Rights argued managers had reviewed the decisions but hadn't documented their reviews

"Each complaint drafted, whether (summary of complaint) or certified complaint is required to be reviewed and documented before the final documents is sent to claimants," the department said.

The department, the audit said, also failed to maintain records of intake interviews, telephone contacts or email complaints. About 97% of the department's 693 junk emails went unread, including several that were actual complaints.

"MDCR informed us it stopped requiring staff to log telephone contacts during the COVID-19 pandemic and current MDCR leadership was not aware of the lack of policies or procedures surrounding monitoring emails for incoming complaint contacts," the audit said.

The audit found the department had not established a formal process for receiving, tracking and addressing customer service complaints. Instead, it had an informal policy of forwarding complaints to a manager.

Lastly, the review found the department failed to request in a timely way access removals for a department software system for 37% or seven of the 19 employee departures reviewed by the Office of Auditor General.

"These individuals had a variety of access permissions related to their former job duties that included, but were not limited to, civil rights claims examiners, a civil rights manager, and a staff attorney," the audit said.

*eleblanc@detroitnews.com*

LII  > Wex  > **procedural due process**

# procedural due process

The U.S. Constitution requires that federal and state governments abide by certain procedures to protect the essential interests of all citizens. The Fifth and the Fourteenth Amendments of the U.S. Constitution guarantee due process to all citizens. The Amendments, also known as the Due Process Clauses, protect citizens when the government deprives them of life, liberty, or property, and limits the government's arbitrary exercise of its powers. The U.S. Constitution requires two types of due process: procedural due process and substantive due process. As indicated by the name, procedural due process is concerned with the *procedures* the government must follow in criminal and civil matters, and substantive due process is related to rights that citizens have from government interference (e.g. right to privacy).

Procedural due process refers to the constitutional requirement that when the government acts in such a manner that denies a citizen of life, liberty, or property interest, the person must be given notice, the opportunity to be heard, and a decision by a neutral decision-maker. The government must also demonstrate that there is an articulated standard of conduct for their actions with sufficient justification. The requirements, called "*fundamental fairness*," protect citizens from unjust or undue deprivation of interest. However, the specific procedures guaranteed by the U.S. Constitution may depend on the nature of the subject matter of the interest in question as well as each individual's circumstances. In the article "Some Kind of Hearing," the famous Judge Henry Friendly provides a list of due process elements for a fair hearing. Judge Friendly's list remains highly persuasive to this day. The list goes as follows:

1. A neutral and unbiased tribunal.
2. A notice of the government's intended action and the asserted grounds for it.
3. The opportunity for the individual to present the reasons why the government should not move forward with the intended action.
4. The right for the individual to present evidence, including the right to call a witness.
5. The right for the individual to see the opposing side's evidence.

6. The right to cross-examination of the opposition's witnesses.
7. A decision based exclusively on the evidence presented.
8. The opportunity to representation by counsel.
9. The requirement that the tribunal prepare a record of the evidence presented.
10. Requirement that the tribunal prepare written findings of fact and reasons for its decision.

In most cases, we examine the fundamental fairness of the government's actions to determine whether the government has met the requirements for due process. The criteria for determining whether the due process requirements have been met depends on whether the particular government action concerns a civil or criminal proceeding. Specifically in civil contexts, the courts utilize a balancing test between private interests, the government's public interest, and the possibility of the government procedure's erroneous deprivation of private interest in evaluating government conduct. On the other hand, in criminal procedures, the court looks to whether the procedure the government has adopted is offensive to the notion of fundamental fairness for the due process analysis. The analysis for due process is thus inquiring more narrowly for criminal procedures.

See: This Washington Law Review article, this list of Due Process Supreme Court Cases, *Slaughter-House Cases*, 83 U.S. 36 (1872), *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[Last updated in January of 2024 by the Wex Definitions Team]

- wex
  - CIVICS
  - the Constitution
  - government
  - THE LEGAL PROCESS
  - courts
  - criminal procedure
  - legal practice/ethics
  - civil procedure
  - constitutional law
  - courts and procedure
  - criminal law and procedure
  - legal education and practice
  - wex definitions
- Keywords
  - criminal procedure
  - PROCEDURAL DUE PROCESS
  - due process
  - Fifth Amendment
  - Fourteenth Amendment

RACIAL EQUITY

TOOL KIT

HERE !



# MDCR
## Diversity Equity and Inclusion

The Diversity, Equity, and Inclusion (DEI) division develops and provides education, training, and resources designed to increase cultural competency at a personal, interpersonal, organizational, and structural level. The DEI Division can collaborate with nonprofit organizations, businesses, and state or local agencies to operationalize DEI principles and practices. In January 2018, MDCR was the first state agency to establish an equity office in the state of Michigan.

The division also hosts a Native American Specialist who works with State of Michigan tribal liaisons and tribal leaders to establish meaningful connections with tribal nations throughout the state.

## DEI Quick Links

Apply for the Michigan Indian Tuition Waiver (MITW)

Request DEI Training or Outreach

## DEI Popular Resources

List of Training Subjects

Download Maawndoonganan. An Anishinaabe Resource Guide

Advancing Racial Equity Toolkit

Resource Guide to Developing a School Equity Plan







# MDCR

Advancing Racial Equity

**MDCR is committed to advancing racial equity in all its initiatives. We also are working to build collaborative relationships with communities, government agencies and organizations throughout Michigan to help them incorporate racial equity into all their policies, processes and decision-making.**

The Racial Equity Toolkit is a starting point for any organization or government agency looking to advance racial equity in their own communities in order to ensure equal opportunity and access for all.

### What is Racial Equity?

Racial equity is the systemic fair treatment of all races that produces equitable opportunities and outcomes for all people.

### What is a Racial Equity Lens?

A racial equity lens is the set of questions we ask ourselves throughout the decision-making process. The lens interrupts the impact of unintended consequences by taking into consideration the lived experiences and perspectives of the racially diverse communities we intend to serve.

### The Racial Equity Toolkit

The Racial Equity Toolkit is a compilation of frameworks, strategies, implementation processes and resources from localities working on racial equity. The toolkit serves as a step-by-step guide to help municipal governments start their racial equity work. While the toolkit has a general structure, it is by no means a one-size-fits-all model. Rather it is a beginning guide providing tangible options - options that have been tried by other

 Advancing Racial Equity 

...ies and townships – that can assist governments in deciding which methods would best suit the demographics and needs of their communities and their goals. With this toolkit, local governments can better assess their internal and external capabilities to accomplish their racial equity goals. Download the Racial Equity Toolkit here.

**Training Solutions Through an Equity Lens**

MDCR's training solutions focus on race extensively but not exclusively as we recognize the intersectionality and multilayers of systemic advantage and disadvantage. For organizations to advance equity and incorporate it across departmental lines, action plans that endorse equity and inclusion are essential to effectively create the long-term implementation of equitable practices, policies and procedures. For more information on Racial Equity Training, download the flyer Training Solutions Through an Equity Lens here.

**Scope of Equity Work**

For all residents of Michigan to experience equitable opportunities to grow and thrive, we need to promote a shared understanding of the root causes of systemic disparities. The information in the flyer Scope of Equity Work highlights current and future efforts centered on directly challenging and fundamentally transforming systems through intentional strategies and proactive steps founded on an equity platform. Download the flyer Scope of Equity Work here.

Contact MDCR Equity Officer Alfredo Hernandez at HernandezA3@michigan.gov for more information.

**MDCR**

**Advancing Racial Equity**

Copyright State of Michigan

EX-51

The Michigan Department of Civil Rights (MDCR) investigates and resolves discrimination complaints and works to prevent discrimination through educational programs that promote voluntary compliance with civil rights laws. The work of prevention through education is of vital importance, since it can help us understand and address the impact of implicit bias, residential segregation, racial isolation, marginalization, and many other interpersonal, institutional, and structural conditions that have shaped and continue to sustain social disparities of the past and present.

The history of cultural practices that have systematically shaped social and economic advantage and disadvantage require strategies that help create equitable access to opportunities for all Michiganders. This toolkit offers racially conscious approaches for dismantling barriers to inclusion that can serve as a platform for the work that lies ahead.

As we embrace a future where discriminatory and exclusive practices become something of the past, this toolkit may set the foundation for beginning the work of increasing racial consciousness and cultural competency through an equity lens. The Racial Equity Toolkit provides a step-by-step guide for any government agency, organization, and community to proactively engage in solutions that thrive in the creativity and broader perspectives that reside in diversity, while recognizing that inclusion is not a natural consequence of diversity.

It is our hope that the Racial Equity Toolkit can help organizations become more immersed in racial equity work with the understanding that racial equity focuses on race extensively but not exclusively. In other words, the racial equity lens provides venues for dismantling a system of advantage based on race in efforts to assess the intersection points that shape the social condition and experiences of marginalized groups.

This toolkit can serve as a resource and a template for organizations seeking to increase inclusive practices through a socially conscious approach that is rooted in the expertise of state and national work, and the recognition that problems that have persisted for centuries demand innovative responses rooted in our shared capacity to think systemically.

## Special Thanks:

MDCR would like to thank the following graduate students and faculty from the Gerald R. Ford School of Public Policy at the University of Michigan for their meaningful contributions, insight and expertise in the research, creation and development of this toolkit:

**GERALD R. FORD SCHOOL
OF PUBLIC POLICY**
UNIVERSITY OF MICHIGAN

- Danisha Sornum, Master of Public Policy, 2018
- Kalia Vang, Master of Public Policy, 2018
- Sruthi Naraharisetti. Master of Public Policy, 2018
- Martha Fedorowicz. Master of Public Policy, 2018
- Elisabeth Gerber. Professor of Public Policy

EX-52

**Structural:** refers to the way historical, social, psychological, cultural and political norms perpetuate advantages based on race. An example would be the way racial disparities in income, wealth and access to quality education originated from a combination of factors including our history of slavery, Jim Crow laws and educational or governmental policies that created access for some and barriers for others.

## Developing a Common Language

The cultural factors that shape our shared understanding are often guided by the words and language we inherit from our communities. Edward Sapir, widely acknowledged as the founder of American anthropology, believed that the language we use influences the way we think and how we understand the world around us. He suggested that once we become a part of a linguistic system, the system imposes and dictates our orientation in the world.[6]

To increase shared understanding, it is important to clearly define the terms we use in conversations. Words with different meanings are often used as synonyms in discussions about race, which can lead to confusion. Although the terms below are interconnected, they are not synonyms and must be used with precision.

## Defining the Terms

### Diversity vs. Inclusion

In conversations about race, we often hear the terms diversity and inclusion used as synonyms. But diversity simply points to difference. On the other hand, inclusion describes the need to incorporate these differences on a shared platform where they are accepted and valued. At times, the concept of diversity is used to imply something positive, yet the term by itself is neutral as there are many environments that are diverse but not necessarily inclusive. For instance, we may find a workplace where leadership belongs to the dominant group while those outside of the dominant group occupy the remaining roles. We must take proactive steps to create and sustain inclusion, recognizing that diversity does not necessarily lead to integration and inclusive practices.

### Equality vs. Equity

Equality is often associated with justice and sameness, yet when its practice and implementation lack an equity lens through which physical, structural and historical differences are acknowledged, inequitable outcomes are created and sustained. Equity takes into consideration how the past has shaped the present and assesses social advantages/disadvantages in order to promote justice and fairness.

---

[6] Ottenheimer, Harriet Joseph. *The Anthropology of Language An Introduction to Linguistic Anthropology.* Belmont: Wadsworth, 2005.





# How the Past **Shapes the Present**

From the 1930s through the 1960s, Federal Housing Administration policies explicitly limited loans to neighborhoods of color based on race.[8] Approximately 98% of FHA loans during this time went to white applicants. This practice combined with others – segregation in schools and a lack of access for people of color to housing based on location through exclusionary brokering – illustrate how past practices that shaped residential segregation and racial isolation led to disproportionate generational wealth accumulation and racial inequities today.

The Fair Housing Law of 1968 was designed to protect buyers and renters from sellers' and landlords' discriminatory practices and to provide housing opportunities to all people. The Fair Housing Act (Title VII of the Civil Rights Act of 1968) introduced mechanisms to prohibit:

- Refusing to sell or rent a dwelling to any person because of race, color, religion, sex or nation origin.

- Discriminating on the basis of race, color, religion or national origin in the terms, conditions or privilege of the sale or rental of a dwelling.

- Advertising the sale or rental of a dwelling indicating preference based on race, color, religion or national origin.

- Coercing, threatening, intimidating or interfering with a person's enjoyment or exercise of housing rights based on discriminatory reasons, or retaliating against a person or organization that aids or encourages the exercise or enjoyment of fair housing rights.

Even with the implementation of mechanisms to disrupt discrimination, residential segregation and racial isolation continue to increase. Intentional strategies that raise awareness of the root causes of systemic inequities strategically help to sustain long-term inclusive policies and practices.

[8] Race and Recession – Applied Research Center

**RACIAL EQUITY TOOLKIT**

Targeting within universalism means being proactive and goal-oriented about achievable outcomes and requires intentional steps:

### Step 1
Define a **universal** goal – i.e., 100% proficiency in eight grade math.

### Step 2
Measure how the overall population fares relative to the universal goal – i.e., 80% of eight graders are proficient.

### Step 3
Measure the performance of population segments relative to the universal goal – i.e., 70% of Latinxs are proficient.

### Step 4
Understand how structures and other factors support or impede group progress toward the universal goal – i.e., classroom instruction materials and lessons designed for English speakers may impede learning including math proficiency in Latinx students.

### Step 5
Implement **targeted** strategies so that each group can achieve the universal goal based upon their need and circumstances – i.e., ESL-specific math tutoring for Latinx students (another group may require a completely different strategy to achieve the same universal goal.)

Targeted universalism is a frame for designing policy that acknowledges our common goals while also addressing the sharp contrasts in access to opportunity between differently-situated sub-groups, such as barriers to quality education, well-paying work, fair mortgages and more. To transform structural inequity into structural opportunity, policies need to address these contrasts and measure success based on outcomes.[12]

The implementation of equity requires that we view inequities through a systemic lens, recognizing that culturally principles based on meritocracy, equal opportunity and personal responsibility are often shaped and influenced by external factors that generate advantages for some and disadvantages for others. To create and implement equity, we must build into the decision-making process intentional steps designed to dismantle patterns of discrimination created by these systems of advantage.

**RACIAL EQUITY TOOLKIT**

# Why a Racial
# **Equity Toolkit?**



Government, from the federal level to the municipal level, has at times upheld laws, public policies and practices that have had devastating consequences for communities of color. Government has upheld racial hierarchy through policies that have sustained – through seemingly race-neutral approaches – unintentional forms of prejudices which normalize one dominant racial experience and result in policies and practices that negatively impact individuals who are not members of the dominant group. In this way, government has actively decided who benefits and who is burdened by these policies and practices. Examples include developing infrastructure in neighborhoods where people of color would be most impacted without evaluating the projected harms and benefits to this community, promoting healthcare practices that are culturally insensitive resulting in decreased participation and distrust, and imposing identification requirements to receive social services that disadvantage families with mixed citizenship status.

## What role does local government play in advancing a racially equitable future?

Agencies of local governments are closest to the people. As such, they possess a unique and significant role in advancing racial equity. Local government can advance racial equity by revising or removing harmful policies and laws, creating new policies and practices to eradicate barriers, and collaborating with influential institutions and systems to advance equitable outcomes. Municipal government can address the root causes of racism and racial inequities rather than focusing on its symptoms. By eliminating inequitable policies and practices, local government opens the door for more participation and access to opportunities and encourages cultural competency through shared learning.

By using a Racial Equity Toolkit, local governments can develop a framework, strategy and the resources needed to intentionally disrupt unintended

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/21/2024

**To:** Mr. Michael D. Williams
50018 Degas
Chesterfield, MI 48051

Charge No: 23A-2021-00395

EEOC Representative:                Yvonne Allen
                                    State, Local & Tribal Coordinator
                                    (313) 774-0030

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Ramiro Gutierrez 05/21/2024
Ramiro Gutierrez
Director

Please retain this notice for your records.

cc: On following page

Marlo Roebuck
CRYSTAL FLASH PETROLEUM
2000 Town Center Suite 1650
Southfield, MI 48075

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

County in which action arose: MACOMB

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

WILLIAMS, D. MICHAEL

## DEFENDANTS

STATE OF MICHIGAN, MICHIGAN DEPT. OF CIVIL RIGHTS, VALERIE BARKLEY (She, Her, Hers)

**(b)** County of Residence of First Listed Plaintiff   MACOMB
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Ingham
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

IN PRO SE. MICHAEL D. WILLIAMS       (586) 372-1400
50018 DEGAS
CHESTERFIELD, MI. 48051

Case: 2:24-cv-11639
Assigned To : Drain, Gershwin A.
Referral Judge: Grand, David R.
Assign. Date : 6/25/2024
Description: CMP WILLIAMS v
STATE OF MICHIGAN ET AL (JP)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

■ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark

### OTHER STATUTES
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
■ 440 Other Civil Rights
■ 441 Voting
■ 442 Employment
■ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### IMMIGRATION
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

*(handwritten: 442)*

## V. ORIGIN *(Place an "X" in One Box Only)*

■ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII OF THE CIVIL RIGHTS ACT. 1964
Brief description of cause:
RACE DISCRIMINATION, RET., 14TH, AND 8TH AMEND. VIOLATIONS, CONSPIRACY, STIGMATIZATION BY THE STATE.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 8.25 Billion

CHECK YES only if demanded in complaint:
JURY DEMAND: ■ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE
June 24, 2024

SIGNATURE OF ATTORNEY OF RECORD
*Michael Williams*

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____